George **FELDMAN**, as Trustee in Bankruptcy of Leasing Consultants, Incorporated, Bankrupt, Plaintiff-Appellee,

v.

**FIRST NATIONAL CITY BANK,**
Defendant-Appellant.

No. 315, Docket 74–1893.

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1975.

Decided Jan. 28, 1975.

Henry Lewis Goodman, New York City (Zalkin, Rodin & Goodman, New York City, on the brief), for defendant-appellant.

George A. Hahn, Daniel A. Zimmerman, New York City (Hahn, Hessen, Margolis & Ryan, New York City, on the brief), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and FEINBERG and MANSFIELD, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Frequently, though it may be exercised, the contours of the trustee's muscle under the "strong-arm" clause of the Bankruptcy Act, § 70c, 11 U.S.C. § 110(c), have consistently failed to take on any sharp definition. The provisions of the complex Bankruptcy Act were no doubt the result of great industry, but to the reader their meaning is frequently concealed. We are presented in this case [1] with the question whether the two year period of limitations provided by § 11e of the Act, 11 U.S.C. § 29(e), applies to a trustee asserting his power under § 70c, or whether he should be allowed such further period as non-bank-

---

1. *See also* Feldman v. National Bank of North America, 511 F.2d 465 (2d Cir. 1975); Feldman v. Chase Manhattan Bank, N.A., 511 F.2d 468 (2d Cir. 1975), decided today.

ruptcy law would permit a judicial lien creditor. We conclude that actions under § 70c are barred if brought more than two years subsequent to the date of adjudication, and reverse the judgment of the district court.

## I

A brief statement of the facts will assist in framing the question presented for decision. Leasing Consultants, Incorporated [LCI] was engaged in the business of purchasing airplanes, as well as other machinery and equipment, and leasing them to customers. Because it required assistance in financing, LCI entered into a loan and security arrangement with First National City Bank [Citibank] on December 15, 1969. According to the terms of the arrangement, Citibank would from time to time lend money to LCI; the loans were to be secured by the assignment of specific leases which had been given by LCI, and by a continuing security interest in the leased property and the rentals it produced. LCI was to maintain a checking account with Citibank, into which the rentals were to be paid. The bank was then to be permitted in its discretion to debit the account in the amounts due under loans which it would make. On December 30 and 31, 1969, Citibank filed UCC–1 financing statements in Queens County and with the New York Secretary of State, covering its interest in leases, rentals and equipment.

In connection with its business activities, LCI had leased a Beechcraft airplane to Raffa Van Atta Ltd. on December 8, 1969, for a five year term, at a monthly rental of $1,093.25. LCI also gave Raffa Van Atta a written option to purchase the plane for an additional $4,380, which was prepaid. On December 29, 1969, LCI assigned the Raffa Van Atta lease to Citibank, under the provisions of the December 15 loan agreement, as security for a loan of $50,-726.80. Citibank took possession of both the lease and the assignment.

On March 2, 1970, LCI also leased a Piper plane to James W. True for a five year term, at a monthly rental of $571.66. True was given a written option to purchase the plane for an additional $2,407, one-half of which was prepaid. On July 24, 1970, LCI assigned the True lease to Citibank as security for advances made by the bank against another, defaulted lease. The bank once again took possession of the assignment and the lease itself.

Shortly after the True lease was executed, on March 5, 1970, LCI leased another Piper aircraft to Vieques Air Link, Inc. Vieques agreed to pay monthly rentals of $662.10 for five years, at the end of which period it had the option— under a separate written agreement—of purchasing the plane for an additional $1,393.90. The option price was prepaid. LCI assigned the Vieques lease to Citibank on June 23, 1970. In this instance too, the assignment was made to secure advances made by the bank against another, defaulted lease. Citibank took possession of both the lease and the assignment.

The financial difficulty experienced by several of LCI's lessees was apparently contagious. On August 18, 1970, LCI filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. (1970), in the United States District Court for the Eastern District of New York. The company consented to adjudication on October 14, 1970, and an order to that effect was entered two days later. George Feldman was appointed trustee.

Citibank continued, without objection from Feldman or anyone else, to collect rentals under the lease assignments until April 18, 1973. On that date Feldman initiated this action, belatedly claiming that the bank's failure to comply with the recording provisions of the Federal Aviation Act of 1958, 49 U.S.C. § 1403

(1970),[2] rendered the various assignments unenforceable against a bankruptcy trustee asserting his powers under § 70 of the Act, 11 U.S.C. § 110 (1970). Feldman consequently sought to recover the post-petition payments made to the bank by Raffa Van Atta, True, and Vieques. Citibank moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that its interest in the assigned leases was properly perfected by filing and possession under N.Y.U.C.C. §§ 9–304 and 9–305 (McKinney's Consol.Law c. 38, 1964), and that in any event the trustee's action was time-barred by the statute of limitations created by the Bankruptcy Act, § 11e, 11 U.S.C. § 29(e) (1970). Feldman cross-moved upon affidavits and exhibits for summary judgment.

The district court, citing its earlier opinion in Feldman v. Chase Manhattan Bank, 368 F.Supp. 1327 (S.D.N.Y.1974), held that the exclusive method for perfecting a security interest in an assigned aircraft lease was that provided by the Federal Aviation Act. Since Citibank had failed to record its interest with the FAA Registry, the court found, its claim to rentals was unenforceable against the trustee acting in his capacity as a hypothetical judicial lien creditor under § 70c of the Bankruptcy Act. Judge Bauman also found no merit to the statute of limitations claim. Relying upon the Supreme Court's interpretation of § 11e in Herget v. Central National Bank & Trust Co., 324 U.S. 4, 65 S.Ct. 505, 89

L.Ed. 656 (1945), he stated that the two year period provided by that section did not apply to "those claims which originate outside the Bankruptcy Act." Since the trustee's powers under § 70c were those which a judicial lien creditor would possess under state or non-bankruptcy federal law, the district court judge concluded that the trustee's action was to be governed by the longer time period provided for such suitors. Finding no specified period of limitations in the Federal Aviation Act, Judge Bauman applied the six year statute which in New York would govern an action for monies had and received, to set aside a conveyance of personalty, or upon a constructive trust. N.Y.C.P.L.R. § 213(1) (McKinney 1972). Since the action was begun by the trustee on April 18, 1973, well within six years after the date of adjudication, he held it timely, and granted summary judgment. We reverse.

## II

Section 11e of the Bankruptcy Act provides that

A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy.

Citibank urged that the recording provisions of the Act did not apply to the assignment of a lessor's interest in a lease, since such a conveyance did not affect title to, or an interest in, any "aircraft."

Partly in response to this argument, the trustee contended that the "leases" assigned to the bank were in fact conditional sales contracts, since the payments by the lessees in each case were substantially equivalent to the value of the plane, and since each contract provided a purchase option. See 49 U.S.C. § 1301(16)(b). The regulations under the Act make clear that an assignment of an interest under a contract of conditional sale is a recordable conveyance. 14 C.F.R. § 49.31.

Because of the conclusion which we reach on the statute of limitations question, we find it unnecessary to decide either of these issues.

---

2. That section provides that

   (a) The Administrator shall establish and maintain a system for the recording of each and all of the following:

   (1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States

   . . . .

   (c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator

   . . . .

Exactly when federal or state law will permit a "further period of time" is a matter which the Act does not resolve. Reviewing the history of the Chandler Act of 1938, ch. 575, 52 Stat. 840, in *Herget v. Central National Bank & Trust Co., supra,* the Supreme Court concluded that the critical question was whether the trustee's cause of action had been "inherited . . . from the bankrupt or the bankrupt's creditors", or had on the contrary "aris[en] under the bankruptcy statutes." *Id.* at 6–7, 65 S.Ct. at 507. Herget, the trustee, had filed a complaint under § 60 of the Act, 11 U.S.C. § 96, attempting to recover payments made by the bankrupt within four months prior to the filing of the petition. Although the claim was brought more than two years after the date of adjudication in bankruptcy, the Illinois residual statute of limitations, Ill. Rev.Stat.1943, ch. 83, § 16, permitted "all civil actions not otherwise provided for [to] be commenced within five years next after the cause of action accrued." Despite this language in the Illinois statute, the Court held that the action was untimely brought. It emphasized that the powers which Herget sought to exercise were generated by the Bankruptcy Act itself, which defined the elements of a preferential transfer voidable by the trustee. That being the case, the Court concluded, there was little reason to look beyond the Act to another federal or state law for the proper period of limitations.

Although it does not appear that the question has ever been presented in the context of § 70c, the distinction drawn by the *Herget* Court has governed trustees' actions under other provisions of the Act. Thus it has been held that a proceeding under § 67a(1), 11 U.S.C. § 107(a)(1), which permits avoidance under certain defined conditions of judicial liens obtained within four months of petition filing, must be brought within two years of adjudication. *Samuels v. Kockos Bros., Ltd.,* 307 F.2d 147 (9th Cir.

1962). A similar rule has been applied to a trustee's action to avoid a transfer made fraudulent by § 67d(3) of the Act, 11 U.S.C. § 107(d)(3), rather than by state law. *Wells v. Place,* 92 F.Supp. 477 (N.D.Ohio 1950). Actions under § 70e, however, have been allowed to proceed even after expiration of the two year period. *See, e. g., Harrington v. Yellin,* 158 F.Supp. 456, 458–459 (E.D.Pa. 1958); *Schutte v. Wittner,* 149 F.Supp. 451, 452 (E.D.N.Y.1957); *Halpert v. Engine Air Service, Inc.,* 116 F.Supp. 13, 15 (E.D.N.Y.1953); *MacLeod v. Kapp,* 81 F.Supp. 512 (S.D.N.Y.1948). That provision allows the trustee to invalidate any transfer made or obligation incurred by the bankrupt which an existing creditor might have avoided under state or non-bankruptcy federal law, had bankruptcy not intervened. *See also Hummel v. Equitable Assur. Soc.,* 151 F.2d 994, 997 (7th Cir. 1945) (action under § 70a(5) governed by state limitation period).

The principle underlying this judicial interpretation of § 11e may be explained by the balance which the Bankruptcy Act attempts to strike between the rights of secured and unsecured creditors. Essentially, the Act is designed to provide an equitable distribution of the estate among the general creditors, after first affording full protection to secured creditors who meet appropriate conditions. One such condition is that the secured party's interest have been so protected against the bankrupt and identifiable existing creditors that it would not have been subject to avoidance under a state or federal law had bankruptcy not intervened. Because upon the filing of the petition the bankrupt and these actual creditors are unable to assert such claims themselves, the trustee is given power to do so on their behalf. Under these circumstances, § 11e allows the trustee as much time to institute avoidance actions as those from whom he "inherited" his claims would have had.[3]

---

**3.** The language of the section makes clear that the trustee may have additional time if the statute of limitations running against an actual creditor expires during the two year period after adjudication.

Other conditions, however, do not necessarily stem from the rights which unsecured creditors would have had but for bankruptcy. Rather, they attempt broadly to prevent inequities to the general creditors, by invalidating pre-bankruptcy transfers because of an imperfection in the transaction. To be sure, in many instances the imperfection asserted by the trustee will be determined by reference to state or non-bankruptcy federal law. For example, although § 60 may, under conditions defined by the Act, be used to avoid a transfer of property by the debtor within four months of bankruptcy, a transfer is deemed to have taken place

> when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. . . . [I]f any transfer . . . is not so perfected . . . it shall be deemed to have been made immediately before the filing of the petition.

11 U.S.C. § 96(a)(2). There is, however, no requirement of an existing creditor holding such a lien, whose rights would flow to the trustee. In such cases, the trustee has been required to bring his action within the two year period provided by § 11e.

■ Viewed from this perspective, it appears clear that Feldman's action under § 70c falls within the latter category. The rights of a judicial lien creditor which he asserts are, of course, defined according to non-bankruptcy law. But as was noted above, the same is true of the rights by which he would test perfection of a transfer allegedly invalid under § 60. Moreover, § 70c explicitly provides the trustee with the rights and powers of

> (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, . . . upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.

11 U.S.C. § 110(c). It is thus apparent that the claim asserted by the trustee under § 70c can be said to be "inherited" from the bankrupt's creditors, *see Herget, supra,* at 6, in only the most nebulous sense.

■■ Even if the trustee acting under § 70c were to be understood as representing the claims of some actually existing creditors, however, it is significant that the section specifies the date of bankruptcy as the time when the trustee's asserted rights accrue. Under § 70e the trustee is given—save for the two year grace period—exactly as much time to proceed as the actual creditor whose rights he asserts would have had. If the relevant period of limitations had run against the actual creditor before the petition was filed, the trustee would also be barred from proceeding. *See* 4A Collier, Bankruptcy ¶ 70.90 [2] at 1037 (14th ed. 1969). *Cf.* McNellis v. Raymond, 420 F.2d 51, 54–55 (2d Cir. 1969). Similarly, the trustee may proceed more than two years after adjudication if— and only as long as—an actual creditor could have. *See* cases cited at p. 1517 *supra.* Because he assumes the status of a judicial lien creditor under § 70c on the date of bankruptcy, however, there is little assurance that an application of the non-bankruptcy period of limitations to the trustee's action would not shorten[4] or extend the time within which an actual creditor could have commenced his action. Strict adherence under such conditions to the length of the period of limitations provided by non-bankruptcy law seems ill-designed to duplicate any rights which, because of the petition filing, cannot be exercised, and appears only accidentally related to the broader purpose of avoiding inequities to

---

4. The period of limitations would begin to run against the trustee on the date of petition filing. One armed with a judgment before that date, for example, might, had bankruptcy not intervened, have obtained a judgment lien on a date subsequent to the date on which the petition was filed. The period of limitations would begin to run against such a creditor from the time he acquired a lien.

the general creditors. We find it far more consistent with the purposes of § 11e, and with the principles enunciated in *Herget* and subsequent cases, to hold that the trustee's action under § 70c is barred after two years from the date of adjudication. Since Feldman's claim was filed more than two and one-half years after LCI's adjudication, it should have been dismissed.

Reversed.