George **FELDMAN, Trustee in Bankruptcy of Leasing Consultants Incorporated, Bankrupt, Plaintiff-Appellant,**

v.

**NATIONAL BANK OF NORTH AMERICA, Defendant-Appellee.**

**No. 453, Docket 74–2086.**

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1975.

Decided Jan. 28, 1975.

George A. Hahn, Daniel A. Zimmerman, New York City (Hahn, Hessen, Margolis & Ryan, New York City, on the brief), for plaintiff-appellant.

Anthony J. D'Auria, New York City (Cole & Deitz, New York City, on the brief, Homer Kripke, New York City, of counsel), for defendant-appellee.

Before KAUFMAN, Chief Judge, and FEINBERG and MANSFIELD, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

█ The facts in this case bear strong resemblance to those in Feldman v. First National City Bank, 511 F.2d 460 (2d Cir. 1975) and Feldman v. Chase Manhattan Bank, N.A., 511 F.2d 468 (2d Cir. 1975), decided today. In 1969 LCI had purchased a North America Sabre Liner from Jack Adams Aircraft Sales, Inc. for $800,000, and then leased the plane to Grant Company for a term of eight years, at a rental of $11,593.75 per month.[1] On March 13, 1970, National Bank of North America [National] loaned LCI $500,000, receiving in return a promissory note calling for repayments at the monthly rate of $11,122.50. The note was secured by a chattel mortgage on the Sabre Liner leased to Grant, which provided that in case of default National could

> take possession of . . . the Mortgaged Property . . . and . . collect and receive all rents, issues, profits, revenues and other income . . .

In addition to the chattel mortgage, National received an assignment of the LCI-Grant lease. National recorded its chattel mortgage with the Federal Aviation Administration, as it was required to do by 49 U.S.C. § 1403. It also took possession of the lease and filed UCC–1 financing statements—designed to cover its interest in the rentals—with the Register of the City of New York, and with the New York Secretary of State.[2]

Thereafter, Grant made its monthly payments to a checking account maintained by LCI at National. On the twentieth of each month National would debit the account in satisfaction of the payments due under the note given it by LCI. The bank continued to do so, with the consent of the trustee, even after LCI was adjudicated bankrupt on October 16, 1970, an event constituting default under the mortgage. In 1973, however, after National had received $440,562.50 in post-petition payments over more than two years, Feldman belatedly interposed an objection to any further collections. In the latter part of 1973,

1. On March 7, 1969, Grant had already paid a $25,000 deposit to Jack Adams toward the purchase of the Sabre Liner. Apparently unable to pay the remainder of the purchase price, Grant then turned for financing to LCI, which bought the plane on April 11, 1969.

The trustee has contended, both in the district court and on appeal, that Grant was given an oral option to purchase the plane for an additional payment of $79,500 upon the termination of the lease. He would conclude from this fact that the LCI-Grant agreement was really a conditional sales contract, see 49 U.S.C. § 1301(16)(b), and that the chattel mortgage relied upon by National could therefore not have conveyed a security interest in the Sabre Liner itself. The short answer to this contention is that the oral option was not—indeed could not have been—recorded, and so is ineffective against National, absent a showing that it had actual notice. 49 U.S.C. § 1403(c).

2. National also attempted to record the lease assignment with the FAA, but failed because it neglected to submit the original lease agreement or a duplicate with ink signatures, as required by the Registry.

Grant purchased the Sabre Liner for $433,705.58. The sale was made pursuant to a stipulation entered November 12, 1973 between the bank and LCI, and the proceeds were deposited in the general funds of the estate, with the exception of $160,473.44, the balance due National under its promissory note. According to the terms of the stipulation, that sum was put in escrow until a determination of the trustee's claims could be made. By the same agreement National consented to toll the running of the statute of limitations against the trustee.

Feldman began this action on January 31, 1974, seeking recovery of the post-petition payments made to National, as well as the $160,473.44 held in escrow. Relying on his status as a judicial lien creditor under § 70c of the Bankruptcy Act, 11 U.S.C. § 110(c), he maintained that the lease assignment was unenforceable against a bankruptcy trustee, since it was not perfected in compliance with the recording provisions of the Federal Aviation Act, 49 U.S.C. § 1403. Forced to deal with the properly perfected chattel mortgage as well, Feldman suggested that because the right to rentals had been conveyed by the unrecorded assignment, the chattel mortgage only covered LCI's reversionary interest in the Sabre Liner. He also maintained that National was barred by laches from asserting its interest in the proceeds from the sale of the plane. Although it might at one time have been able to foreclose on LCI's reversionary interest, Feldman argued, National had lost its right to do so by failing to act during the more than three years since LCI's initial default.

The district court granted the bank's motion for summary judgment. It found the trustee's attack on the enforceability of the unrecorded lease assignment irrelevant, since National's chattel mortgage clearly allowed it to collect post-bankruptcy rentals. Judge

Weinstein accordingly held that National was entitled to the payments already made, as well as the $160,473.44 being held in escrow.[3]

We affirm.

I

■ We have today held, in Feldman v. First National City Bank, 511 F.2d 460 (2d Cir. 1975), that the two year period of limitations provided by § 11e of the Bankruptcy Act, 11 U.S.C. § 29(e), bars a trustee from asserting his status under § 70c of the Act beyond two years from the date of adjudication. In this case the stipulation to toll the statute of limitations was executed on November 12, 1973, more than three years after LCI was adjudicated bankrupt. The complaint filed January 31, 1974 was, therefore, untimely.

II

■ We need not, however, rest our affirmance in this case solely upon the statute of limitations. We hold also that Judge Weinstein was plainly correct in his conclusion that the chattel mortgage conferred a right on National to receive the rental payments, as well as the $160,473.44 held in escrow. The unambiguous language of that agreement empowered the bank to "collect and receive all rents" in the event of LCI's default. Indeed, in a petition to sell the aircraft filed in the District Court for the Eastern District of New York during June of 1971, the trustee clearly admitted that "[t]he $844,687.50 [representing rental payments still due under the Grant lease] is subject to a recorded mortgage in the hands of National Bank of North America." It is also undisputed that LCI's adjudication in bankruptcy was an event constituting default under the terms of the mortgage. Finally, Feldman admits that the mortgage—whatever security it might have covered—was properly perfected by filing with the

3. Because of the conclusion he reached on this question, the district judge found it unnecessary to rule upon the bank's claim that Feldman's action was barred by the Bankruptcy Act's two year statute of limitations. 11 U.S.C. § 29(e).

Registry of the Federal Aviation Administration. Under these circumstances the trustee's argument that the chattel mortgage conferred no interest in the Grant rentals is totally without merit.

It is true, of course, that National collected the post-petition rentals without having instituted foreclosure proceedings. But the bank can hardly be faulted for not having pressed its foreclosure rights, when the trustee permitted it, without any objection whatsoever, for a period of approximately three years, to debit LCI's checking account monthly in satisfaction of payments due under the secured note. In re Berdick, 56 F.2d 288 (S.D.N.Y.1931). *See* In re Brose, 254 F. 664 (2d Cir. 1918). For the same reason, Feldman's claim that National is barred by laches from collecting the $160,473.44 held in escrow is devoid of merit.

Affirmed.