**George FELDMAN, as Trustee in Bankruptcy of Leasing Consultants Incorporated, Bankrupt, Plaintiff-Appellee,**

v.

**CHASE MANHATTAN BANK, N.A., Defendant-Appellant.**

**No. 76, Docket 74–1277.**

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1975.

Decided Jan. 28, 1975.

George A. Hahn, Daniel A. Zimmerman, New York City (Hahn, Hessen, Margolis & Ryan, New York City, on the brief), for plaintiff-appellee.

Andrew J. Connick, New York City (Milbank, Tweed, Hadley & McCloy, New York City, on the brief; Barry G. Radick, New York City, of counsel), for defendant-appellant.

Before KAUFMAN, Chief Judge, and FEINBERG and MANSFIELD, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

This case presents still another chapter, and a few new characters, in the seemingly endless saga of the bankruptcy of Leasing Consultants Incorporated [LCI]. The familiar pattern of lease, loan, and security, seen in two other cases decided today, *see* Feldman v. First National City Bank, 511 F.2d 460 (2d Cir. 1975); Feldman v. National Bank of North America, 511 F.2d 465 (2d Cir. 1975), is present here too. In this case LCI purchased the plane, a Cessna 411, from Sunny South Corp. and leased it to Devcon International Corporation (formerly Zinke-Smith, Inc.) for five years at $2,430.40 per month. LCI enlisted the help of Chase Manhattan Bank, N.A. [Chase] in paying off a mortgage on the Cessna held by a Florida bank. In return for its $140,963.20 loan, Chase received an assignment of the Devcon lease on July 11, 1967, and a chattel mortgage covering the plane itself the following day.

One week later, on July 19, 1967, Chase recorded its chattel mortgage with the Federal Aviation Administration Registry. It also took possession of the lease and the lease assignment, though apparently neither document was recorded, either with the FAA or elsewhere. Devcon agreed to render its monthly rent payments directly to Chase, and continued to do so without protest by the trustee after LCI consented to adjudication in bankruptcy on October 14, 1970.

During the fall of 1971, however, Devcon became delinquent in its payments, and early the following year Chase seized the plane, intending to sell it at a public auction on March 21. Shortly before the sale was to take place, Devcon filed suit against Chase and LCI in the District Court for the Southern District of Florida, asking that the sale be enjoined, and the lease reformed to include a nominal purchase option which it alleged LCI had given orally. A temporary restraining order issued, and in May of the same year Devcon added a cause of action against Chase for wrongful seizure of the Cessna.[1] On January 23, 1973, the claim against Chase was dismissed pursuant to a settlement agreement whereby Chase was paid $18,000 in satisfaction of the rentals still due under the lease, and in return assigned its chattel mortgage to Devcon. The claim for reformation of the lease proceeded to trial in March of that year in the Florida court, but before a verdict was rendered, Feldman—LCI's trustee in bankruptcy—sold his interest in the plane to Devcon for $20,000 pursuant to a settlement agreement.

Feldman then began this action on March 22, 1973, seeking recovery of the $35,460 in post-petition rentals paid by Devcon to Chase, plus the $18,000 given in satisfaction of future rentals on January 23, 1973. Here too, as in the *Citibank* and *National* cases, *supra,* the trustee contended that the bank's right to the rentals under its unrecorded lease assignment, *see* 49 U.S.C. § 1403(c), was subordinate to the claim of the trustee acting under § 70c of the Bankruptcy Act, 11 U.S.C. § 110(c). Relying upon its chattel mortgage, Chase counterclaimed for the market value of the Cessna at the time Feldman sold it to Devcon.

The district court granted summary judgment to Feldman. It found that recording under the Federal Aviation Act was the exclusive method for perfecting an interest in an assignment of a lease. The court also held that Chase could not assert any rights under the chattel mortgage, since it had assigned all its interest in the plane to Devcon on January 23, 1973.

I

We believe that Feldman's claim in this case, as in Feldman v. First National City Bank, 511 F.2d 460 (2d Cir.

---

1. Devcon alleged that Chase had seized the plane without providing notice in writing, as was required by the terms of the lease.

1975), and Feldman v. National Bank of North America, 511 F.2d 465 (2d Cir. 1975), would have been barred by the two year statute of limitations set forth in § 11e of the Bankruptcy Act, 11 U.S.C. § 29(e). But Chase failed in both the District Court and this court to raise any objection to the timeliness of the trustee's action. Under these circumstances we are obliged to consider the defense as waived. Fed.R.Civ.P. 8(c), 12(b); Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1155 (2d Cir. 1968); 1A Collier, Bankruptcy ¶ 11.12 at 1204; ¶ 11.13 at 1213 (14th ed. 1974).

## II

Because it assigned its rights under the properly perfected chattel mortgage to Devcon by the agreement of January 23, 1973, Chase is consequently left in the position of asserting its interest in the $53,460 in post-petition payments pursuant to the lease assignment. Whatever may be the merits of the trustee's argument that this interest was unperfected, we find convincing reasons for holding that Feldman should be barred from challenging it by reason of equitable estoppel considerations.

At the time Chase released its rights under the chattel mortgage, LCI's bankruptcy petition had been on file in the court for almost two and one-half years. During that entire period of time the trustee had not given the slightest indication that he found any infirmity with the lease assignment procedures. Indeed, Chase continued throughout that period to collect rentals from Devcon with Feldman's acquiescence. Shortly before the stipulation of discontinuance was entered, in December 1972 or January 1973, Daniel Zimmerman, the trustee's attorney, for the first time indicated to Chase that he might seek recovery of the post-petition rentals, but only if Feldman were unsuccessful in his defense of the Florida action. By that time, however, Chase and Devcon had long since reached agreement upon the terms of settlement. At a conference held on April 13, 1972 and attended by the trustee as well as representatives of the bank and lessee, it was agreed that—in return for a release—Devcon would remit to Chase the $18,000 subsequently paid, in satisfaction of the remaining rentals due and in reimbursement of Chase's expenses incurred in taking possession of the plane. Doubtless relying on the earlier negotiations, and on the trustee's failure for more than two years to attack the lease assignment, as well as the uncertainty of Feldman's belated threat to sue, Chase relinquished its acknowledged rights under the mortgage. For the same reasons, the bank had taken no steps subsequent to August 18, 1970 to seek any of the remedies against LCI for which the mortgage made provision. Among the bank's prerogatives under that document was its authorization to enforce "any . . . rights or remedies accorded by the Uniform Commercial Code." Section 9–504(1) of the Code permits a secured party "after default [to] . . . lease . . . the collateral," and to apply the proceeds toward "satisfaction of the indebtedness secured by the security interest under which the disposition is made." N.Y.U.C.C. § 9–504(1) (McKinney's Consol.Laws, c. 38, 1964).

Accordingly, we find that the bank reasonably relied upon the trustee's action in failing to assert, and in ultimately surrendering, its interest under the chattel mortgage. This court is not without power to prevent the inequity which would follow from allowing Feldman belatedly to attack the lease assignment with which Chase is left. Feldman v. Trans-East Air, Inc., 497 F.2d 352 (2d Cir. 1974). Cf. Parsons v. Lipe, 158 Misc. 32, 286 N.Y.S. 60, 107–109 (Spec.T. Sup.Ct. Onondaga Co. 1933), aff'd per curiam 269 N.Y. 630, 200 N.Y. 31 (1936); Restatement of Restitution § 142 (1937).

Reversed.