Pasquale PETRAMALE, Plaintiff,

v.

LOCAL UNION 17, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, et al., Defendants.

No. 81 Civ. 4817 (IBC).

United States District Court, S.D. New York.

Jan. 6, 1986.

Hall & Sloan, New York City, for plaintiff; Burton H. Hall, of counsel.

Sipser, Weinstock, Harper, Dorn & Liebowitz, New York City, Theodore T. Green, Connerton, Bernstein & Katz, Washington, D.C., for defendant Laborers' Intern. Union of North America, AFL–CIO; I. Philip Sipser, Richard Dorn, New York City, Laurence E. Gold, Washington, D.C., of counsel.

Rider, Weiner, Lewis & Melchiori, P.C., Newburgh, N.Y., for defendant Local No. 17; Alan R. Lewis, of counsel.

IRVING BEN COOPER, District Judge.

Defendant Laborers' International Union of North America, AFL–CIO ("the International" or "LIUNA") moves for partial summary judgment pursuant to Fed.R. Civ.P. 56, requesting us to find that neither monetary damages nor attorneys' fees against the International would be appropriate in this case. Defendant Local No. 17 ("the Local" or "Local 17") and the individual defendants support only that portion of the motion as relates to attorneys' fees and argue that the rationale advanced by the International is equally applicable to them. Further, the Local and individual defendants oppose the request of the International that summary judgment be granted it as to monetary damages. Plaintiff opposes the motion *in toto.*

The International also moves to amend its answer to assert the affirmative defense of statute of limitations, and, if granted, for judgment on the pleadings. The Local, individual defendants and plaintiff oppose the motion. In addition, the International moves without opposition to be represented by Theodore T. Green, Esq.

Plaintiff moves for leave to amend its complaint to allege denial of job referrals and loss of employment opportunities. All the defendants oppose plaintiff's request.

## FACTS

Plaintiff is a member of Local 17. At a meeting of the Local held on August 29, 1980, plaintiff became involved in an altercation between two members present. The meeting was interrupted and the police were called. When order was restored, plaintiff stood up and spoke without recognition from the presiding official. According to the Minutes of the meeting:

> Br. Pat Petramale stated from the back of the meeting Hall that all three of you are crooks. Referring to the three Delegates on the rostrum. All the fucking Officers are crooks. The whole fucking Union and International is crooked and Br. Reed and Br. Curry Naming the Election Committee are fucking liars. Fuck you all, you laborers deserve these people. I'm getting out of this fucking Union. They took all your money.

Plaintiff then walked out of the meeting. Two days later plaintiff was quoted in a local newspaper claiming that the scuffle was "set up" by the Local union leadership.

Charges were filed against plaintiff by the three individual defendants, Anthony Galietta (the Local's president), Lorenzo Diorio (the Local's business manager) and Lawrence T. Diorio (the Local's Secretary-Treasurer). The charges, directed both at plaintiff's conduct at the meeting and his subsequent remarks to the newspaper, alleged violations of two sections of the Uniform Local Union Constitution ("ULUC"): section 3(f), forbidding, *inter alia*, "interfer[ence] with the proper and orderly conduct" of union business, the use of "vulgar and profane language," and the making of "slanderous statements or accusations" about union officers, and section 3(g), prohibiting members from "willfully slandering" union officers and from "circulating false reports or gross misrepresentations" about their honesty.

The hearing by the Local was held on October 29, 1980; plaintiff did not appear. The Board found him "guilty of all charges," fined him $1,500 and suspended him from attendance at union meetings for the next ten years. The membership of the Local approved these measures by a unanimous vote.

Plaintiff then appealed this decision to the International and submitted various documents in support thereof. The hearing before the International's Eastern Hearings Panel was held on June 23, 1981. Once again, plaintiff did not appear although duly notified. The Hearings Panel modified the Trial Board's ruling by finding that the only conduct which violated sections 3(f) and (g) of the ULUC was plaintiff's conduct at the meeting, not his report to the newspaper. The Panel also modified the discipline imposed by rescinding the fine and reducing plaintiff's suspension to two years.

Plaintiff filed this lawsuit on August 4, 1981. At the convention of the local unions and district councils held September 14–18, 1981, the delegates voted to repeal sections 3(f) and (g). In December 1981 Local 17 further reduced plaintiff's suspension to the time of the meetings held prior thereto.

A trial was held before us resulting in a jury verdict for defendants. On appeal, the Second Circuit reversed on the ground that a union member cannot be disciplined for a charge which does not distinguish between protected speech and other behavior, and concluded that "Petramale is entitled to a directed verdict on liability." *Petramale v. Local No. 17 of Laborers International Union of N.A. et al.*, 736 F.2d 13, 19 (2d Cir.1984). The Court of Appeals further declared:

> Since subsections (f) and (g) of Article II, section 3 of the Uniform Local Union Constitution have been deleted, Petramale's claims for declaratory and injunctive relief are moot. His claims for injunctive relief against the discipline imposed by Local 17 are viable, and an appropriate order consistent with this opinion should be entered by the district

court on remand. His claims for damages and fees must be adjudicated on the remand.

*Id.*

We now proceed to examine each of the motions seriatum.

### I. *Motions by LIUNA*

### A. *Dismissal of the Claims for Monetary Damages*

LIUNA argues that it cannot be liable in damages since it merely performed its internal appellate functions in good faith. The International does not quarrel with the position that it could be liable for injunctive or declaratory relief. However, it repeats the assertion made by the Second Circuit that any such relief against it is now moot. Local 17, the individual defendants and plaintiff contend that the questions of whether the International acted only as an appellate review board and whether it acted in good faith are triable and inappropriate for summary judgment.

█ When a national or international union acts only as an appellate body and exercises its function in good faith, it cannot be answerable in damages to a member who is wrongfully disciplined. *See International Brotherhood of Electrical Workers v. NLRB*, 487 F.2d 1113, 1129 (D.C.Cir. 1972), *aff'd*, 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1973); *Solomon v. Brotherhood of Painters, Decorators and Paperhangers of America*, 218 N.Y. 115, 122–23, 112 N.E. 752 (1916) (Seabury, J.); *Schouten v. Alpine*, 215 N.Y. 225, 231–32, 109 N.E. 244 (1915); *Ehrlich v. Maggiore*, 24 A.D.2d 947, 265 N.Y.S.2d 418, 420 (1st Dep't 1965). This issue is distinct from the question also raised by LIUNA of the liability of a national or international union for acts of its local acting as an agent. *See Chapa v. Local 18*, 737 F.2d 929, 932 (11th Cir.1984); *NLRB v. Local Union No. 46*, 727 F.2d 234, 237 (2d Cir.1984); *Shimman v. Frank*, 625 F.2d 80, 94–99 (6th Cir.1980); *Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Machine Operators*, 338 F.2d 309, 319 (5th Cir.1964). Indeed, this second issue is

moot in the instant case since the Second Circuit already found that both the Local and International are liable. *See Petramale, supra,* at 19.

We thus must determine whether the International acted only in its appellate capacity and whether it acted in good faith (there is no claim that it acted fraudulently). With regard to the first question, the Local and individual defendants contend that LIUNA's "Hearing Panel did not simply review a cold record of the proceedings of the Local 17 trial board, but took live testimony from the three charging parties [the individual defendants herein] as well as from the Recording Secretary Victor Garzione." (Counter Statement of Material Facts as to Which There is No Genuine Issue to be Tried, ¶ 17)

The Third Circuit in *Goodman v. Laborers International Union of America*, 742 F.2d 780, 784–85 (3d Cir.1984) and the Ninth Circuit in *Perry v. Milk Drivers' & Dairy Employees' Union*, 656 F.2d 536, 539 (9th Cir.1981) addressed an analogous issue to the one now before us. In both cases, the courts of appeal questioned whether defects in a hearing before a local union trial board were cured by a later fair hearing before the international union. In *Perry*, the Court held that a full trial *de novo* which makes an independent determination of the merits can cure the defects that arose from a biased panel of the local union. *Perry, supra,* at 539. The Court in *Goodman* further explored whether the action taken by the international constituted a trial *de novo* or a review of the local decision. In determining that the international's appeal panel acted as a reviewing board and did not retry the plaintiff therein, the Third Circuit relied on the following factors: (1) The wording of the constitution of the international union suggested that its appellate power was limited to a review of the local decision and did not extend to independent determinations of the merits. (2) Although the plaintiff was permitted to testify, call two character witnesses, cross-examine the witness called by the opposition and be represented by counsel, the

record of the local trial board hearing was incorporated into the evidence considered by the international panel, which seriously undermined the independence and objectivity of the latter. (3) The language of the findings of the International panel indicated that it conducted a review process: its determination noted the fairness of the trial board and stated, "the charges are amply supported by the evidence," without making any specific findings. (4) The parties expected an appeal rather than a retrial. *Goodman, supra,* at 785.

We find these factors applicable to the instant inquiry of whether the International panel acted in an appellate capacity. In order to fully evaluate each of the elements, we studied the entire file in this case: a total of 95 documents, the 654 page trial transcript and trial exhibits, as well as the briefs before the appellate court.

With regard to the first factor, the relevant provisions of the constitution of LIU-NA effective when plaintiff appealed the determination of the Local stated:

Section 7. If either the charging party or the accused is aggrieved, he may within thirty days from the date of notice of said action, appeal therefrom to the General Executive Board of the International Union, by filing such appeal with the General Secretary-Treasurer ... in writing. The appeal shall clearly and specifically set forth the grounds in support of said appeal and shall contain a copy of the findings and decision, and action.

After notice of such appeal ... the Local Union shall then submit promptly to the General Secretary Treasurer, the following:

1. Copy of the charges
2. Copy of the notice for a hearing
3. Record of the Trial Board hearing
4. Copy of Report of the Trial Board
5. Copy of notification of the Trial Board's decision
6. Copy of minutes of regular meeting at which the Trial Board reported to the Local Union

7. Copy of notification of Local Union action.

(Exhibit 1) Clearly, the constitution of the International envisioned an appellate process by its hearings panel.

The second factor we must consider is the extent to which the appellees presented a defense at the hearing before the International panel. We note that the panel did elicit a very slight amount of testimony from the three individual defendants concerning the facts underlying the charges against plaintiff (seven pages of stenographer's minutes in total) (Exhibit 5); plaintiff did not testify or cross-examine because he did not appear. However, the panel examined the entire record in the case in reaching its determination; indeed, as we have already noted, the union's constitution mandated that the appellate court review, *inter alia,* the record and report of the trial board hearing as well as the minutes of the regular meeting where the trial board reported to the local union. In short, LIUNA's determination was based mostly upon the record before it, undermining the independence of the International panel.

The third element involves whether the words used by the International panel in making its findings constitute language of review. The recommendation of the Eastern Hearings Panel to the General Executive Board reads as follows:

*Appeal of Pasquale Petramale, Local Union 17, Newburgh, N.Y.*

In this case, Pasquale Petramale, by letters, etc., postmarked January 28, 1981, appeals from the decision of the Trial Board of the Local Union finding him guilty of charges preferred against him of violating Article III, Section 3(f) and 3(g) of the Uniform Local Union Constitution fining him $1,500 and suspending him from attending meetings for a period of ten years.

There was an appearance on behalf of Local Union 17, Newburgh, N.Y., and no appearance by the Appellant.

The Panel reviewed and considered the record in this case, and

FINDS: 1. That there was some conflict as to the time and place when the hearing on the charges in this was to be held.

2. That this was eventually cleared and the Appellant was made aware of the time and place of the hearing on these charges.

3. That Appellant failed to appear at the hearing on these charges.

4. That Appellant violated Article III, Section 3(f) and (g) of the Local Union Constitution when attending meetings. The Panel, accordingly

RECOMMENDS: That the appeal be denied; that the suspension from attending meetings be reduced to two years and the fine imposed be rescinded.

(Exhibit 24)

The General Executive Board considered this recommendation and at its meeting commencing July 7, 1981 decided:

"After due deliberation, it is

VOTED: That the report of the Panel is approved and that the Findings and Recommendation be and the same hereby are adopted.

We find that the language used by the International's Executive Board in making its determination demonstrates that it acted as a reviewing panel.

The final factor involves the expectations of the parties. There can be no doubt that plaintiff applied for, and treated his request as, an appeal. On January 26, 1981, plaintiff's then counsel, Joseph M. Ingarra, Esq., wrote a letter to the General Secretary-Treasurer, General Executive Board, of the International Union. In it he stated, "Pursuant to Section 7 of Article XII of the Uniform Local Union Constitution, Patsy Petramale, the accused, files an *appeal* from a decision of the trial board, Local No. 17, dated October 29, 1980...." (emphasis added) Furthermore, Mr. Ingarra's brief to the International panel, written in the tenor of a brief to a judicial appellate tribunal, was entitled, *"Appeal* Pursuant to Article XII Section 7 of the Uniform Local Union Constitution." (emphasis added) (Exhibit 33) We have not come across any

evidence even suggesting that plaintiff or defendants did not treat as an appeal the hearing before the International panel.

Based upon our analysis of the foregoing factors, we do not hesitate to conclude that the International panel acted in an appellate capacity. Consequently, if it exercised its function in good faith, it cannot be held liable in damages.

The Local Union argues that the International did not act in good faith since it proceeded with the appeal without giving the Local notice of the impending or potential change in the union's constitutional provisions which the Local was attempting to enforce. Plaintiff contends that the bad faith of the International was evidenced by its knowledge, at the time plaintiff's appeal was decided, that the constitutional provisions under which plaintiff was disciplined were contrary to law as violative of free speech and that the law obligated LIUNA to delete them.

The Second Circuit remanded this case with the direction that plaintiff's "claims for damages and fees must be adjudicated...." *Petramale, supra,* at 19. In our opinion, it would fall outside this mandate to adjudicate whether the International panel acted in good faith when rendering its opinion on plaintiff's appeal. The plain fact remains that plaintiff and the Local Union had many opportunities at the trial to prove that the International acted in bad faith. Indeed, in his memorandum opposing the motion, at 1, counsel for plaintiff states:

In November 1982, defendant Laborers' International Union of North America ("LIUNA") moved for summary judgment dismissing the action as to it, arguing inter alia "that LIUNA may not be held responsible for the alleged wrongful conduct of a local union where its only actions were to affirm on appeal the discipline imposed by a local union upon an uncontested record...." The motion was denied by this Court on February 23, 1983.

Having been aware before the trial that this was one of the issues raised by the International, plaintiff, the Local and the individual defendants were certainly on notice that this claim would be adjudicated.

■ The jury rejected plaintiff's claim of liability against the International, and in reversing, the Second Circuit held that a union member cannot be disciplined for a charge which does not distinguish between protected speech and other behavior; the Court did not predicate its finding on bad faith on the part of the International. In addition, our own independent review of the trial record satisfies us that neither plaintiff nor the Local has proven that the International acted in bad faith. We regard it entirely too belated and beyond the scope of what we are now required to adjudicate, to afford the parties another opportunity to test out the question of bad faith. We note too that no relevant additional evidence on this issue has even been suggested in the papers supporting this motion. Since, as already pointed out hereinabove, the International acted in an appellate capacity and performed its function in good faith, it cannot be held liable in damages. Further, as the Second Circuit already found, plaintiff's claims for declaratory and injunctive relief against subsections (f) and (g) of Article III, section 3 of the Uniform Local Union Constitution are now moot. Consequently, we grant the motion of the International for partial summary judgment as to damages.

### B. Dismissal of the Claim for Attorneys' Fees

■ The International also requests that we grant summary judgment dismissing plaintiff's claim for attorneys' fees. The Local and individual defendants support the position of the International that no attorneys' fees should be awarded plaintiff, and argue that the rationale put forth by LIUNA is equally applicable to them. Plaintiff opposes the motion.

We decline to decide this issue at the present time. Although plaintiff is clearly the prevailing party on the question of liability, the litigation herein has not as yet been brought to a close. There may be proof adduced during the trial on damages that would impact, even to a slight degree, our determination on the appropriateness of awarding plaintiff attorneys' fees. Our determination finds support in two cases.

In *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 749 F.2d 1000 (2d Cir.1984), our Circuit Court of Appeals set forth, *inter alia*, one consideration in requests for attorneys' fees which is applicable to the instant situation. The Circuit noted:

> Although the substantial verdict awarded by the jury for violation of the plaintiffs' LMRDA [Labor Management Reporting and Disclosure Act] rights was largely set aside ... it had the potential effect of deterring the union from denying members their due process procedural rights guaranteed by § 101 of LMRDA and of encouraging union members to enforce those rights through § 102.

Similarly, if the jury herein awards a large verdict to the plaintiff and against the Local and individual defendants, it could potentially affect the future behavior of both the International and Local union as well as the responses of their members—a factor to be considered in awarding attorney's fees.

A similar rationale was posited by the Fifth Circuit Court of Appeals in *Landry v. Sabine Independent Seamen's Association*, 623 F.2d 347 (5th Cir.1980) where the Court found that in light of the nominal sums of money awarded in damages and the small number of union members involved, the suit did not confer a substantial benefit on union members and attorneys' fees were thus inappropriate. *Id.* at 351. However, the Court noted that fees will not be precluded by numbers alone when the issue about which the case is concerned is of paramount importance, such as the right of free speech, and the rights of union members would in all likelihood have continued to be infringed but for plaintiff's action. *Id.* at 351 n. 4.

We do not at this time undertake to decide whether plaintiff's suit vindicated the rights of other union members—a significant inquiry when we get to the question of the appropriateness of awarding attorney's fees. At this juncture we merely note that the amount of damages awarded may have some impact on the issue of attorney's fees.

Accordingly, the motion by the International for summary judgment on the attorney's fees issue is held in abeyance pending the conclusion of the trial on damages.

C. *LIUNA's Motion for Leave to File an Amended Answer and for Judgment on the Pleadings*

LIUNA moves for leave to file an amended answer asserting a defense of statute of limitations, and if granted, for judgment on the pleadings. The Local, individual defendants and plaintiff oppose the motion.

Plaintiff's cause of action accrued on July 14, 1981; his complaint was filed with this Court on August 4, 1981. Although the Local and individual defendants were served promptly, the International was not served until June 1982, eleven months after the action had accrued. LIUNA contends that it did not at that time (or anytime prior to or during trial) claim that the statute of limitations barred plaintiff's action against it because the rule in our District was that the doctrine of laches applied to Title I Labor Management Reporting and Disclosure Act ("LMRDA") cases and because other jurisdictions borrowed state statutes of limitations, all of which set a period greater than eleven months; consequently, an affirmative defense of statute of limitations would have been futile. However, on June 8, 1983, one month after the conclusion of the trial, the Supreme Court decided *Delcostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), which held that the most appropriate statute of limitations in a case involving a breach by an employer of a collective bargaining agreement and a breach by a union of its duty of fair representation was the six month period con-

tained in section 10(b) of the NLRA. Thus, according to LIUNA, plaintiff's claims against the International were barred by this six month statute of limitations which LIUNA could not assert until the *Delcostello* opinion was decided, and at a time subsequent to the trial. LIUNA also emphasizes that several courts have applied the rule in *Delcostello* to claims arising, like the one herein, under Title I of LMRDA. *See Davis v. United Automobile Workers*, 765 F.2d 1510 (11th Cir. 1985); *Adkins v. Electrical Workers*, 769 F.2d 330, 119 L.R.R.M. 3594 (6th Cir.1985); *Vallone v. Local 705, Teamsters*, 755 F.2d 520, 521–22 (7th Cir.1984); *Steelworkers Local 1397 v. United Steelworkers*, 748 F.2d 180, 182–84 (3d Cir.1984); *Linder v. Berge*, 739 F.2d 686, 688–89 (1st Cir.1984); *McConnell v. Teamsters Local 445*, 606 F.Supp. 460 (S.D.N.Y.1985) (Weinfeld, J.); *Turco v. Local Lodge 5, Boilermakers*, 592 F.Supp. 1293, 1294 (E.D.N.Y.1984).

In asserting that its application is timely made, LIUNA refers to the case of *Emich Motors Corp. v. General Motors Corp.*, 229 F.2d 714 (7th Cir.1956). In that case, plaintiff's antitrust complaint was filed in 1941. A ten month trial between April 1947 and February 1948 resulted in a verdict for the plaintiff. On appeal, the Circuit Court reversed; the Supreme Court then reversed the Circuit, and the case was remanded for a whole new trial on liability and damages in May 1951. In December 1952 defendant was allowed leave to file an amended answer which raised for the first time the defense of statute of limitations; in March 1955 defendant's motion for summary judgment was granted since the limitations period had expired before the action was commenced. The Seventh Circuit held that Fed.R.Civ.P. 15(a) "does not distinguish between amendments after appeal and remand and those before appeal," 229 F.2d at 718, particularly when the basis of the defense did not become clear until judicial opinions were issued on the limitations issue in other cases decided subsequent to the original trial. In so ruling, however, the Seventh Circuit explicitly stated:

Plaintiffs also rely on *Stewart v. United States*, 7 Cir., 199 F.2d 517 [ (1952) ]. That opinion was on a second appeal. In the first appeal, 7 Cir., 186 F.2d 627, 634 [ (1951) ], this court had said: *"It follows from what we have held that plaintiffs are entitled to a judgment, and all that remains is the assessment of plaintiffs' damages." From this language we see that the remand there was not for a new trial but only for the assessment of damages. This court correctly held that it was then too late for the Government to inject into the case by an amended answer a new defense to the action.*

(Emphasis added)

With regard to allowing leave to amend an answer, the Seventh Circuit's distinction between a remand for a whole new trial and a remand to determine damages follows from the Supreme Court decision in *Retzer v. Wood*, 109 U.S. 185, 188, 3 S.Ct. 164, 166, 27 L.Ed. 900 (1883), where it was held: "It is well settled that, in the absence of a contrary rule established by statute, a defendant who desires to avail himself of a statute of limitation as a defense must raise the question either in the pleading, or on the trial, or *before judgment."* (Emphasis added) "A reversal of the judgment on appeal, without specific limiting instructions to the trial court, brings the case back for trial with the issues joined and gives the parties the same rights as though the judgment had never been entered." Comment, *Civil Procedure—Amendment to Answer—Affirmative Defense Raised on Remand,* 42 Iowa L.Rev. 421, 422 (1957); *see also City of Columbia v. Paul N. Howard Co.,* 707 F.2d 338 (8th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983). In contrast, a reversal which decides the question of liability and remands only on the question of damages, as occurred herein, presents the district court with a final judgment on the liability issue. Since a final judgment has been rendered, the defense of statute of limitations can no longer be raised. *See Retzer, supra.* We must, therefore, deny LIU-

NA's motion to amend its answer to include the defense of statute of limitations.

Our determination is bolstered by our observation that the *Delcostello* opinion upon which LIUNA's application is based was decided on June 8, 1983, the day after notice of appeal was filed in the instant action. However, LIUNA did not file its brief on appeal until November 9, 1983, five months after the *Delcostello* decision. In its appellate brief LIUNA noted that it "was not served with the complaint until June 1982, almost one year after it was filed," (Brief for Appellee LIUNA, at 3), but nowhere in the brief did LIUNA refer to the *Delcostello* opinion and why, in light of that opinion, it should now be dismissed as party. Although as a general rule, a party cannot urge a different theory of recovery on an appeal, an exception is created where the opposition has a fair opportunity to defend and cannot offer additional evidence on the new theory. *Universe Tankships, Inc. v. United States,* 528 F.2d 73, 76 (3d Cir.1975); *see McMillan v. Marine Sulphur Shipping Corp.,* 607 F.2d 1034, 1038–39 n. 8 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). Since LIUNA's new theory is based on law, not fact, plaintiff clearly would have had a fair chance to oppose it on appeal and would not have been able to offer any additional evidence. In short, LIUNA had a full opportunity to raise this issue before judgment on the liability phase was rendered but did not do so. Its present application thus comes too late. *See also Feldman v. Chase Manhattan Bank, N.A.,* 511 F.2d 468, 470 (2d Cir.1975) (where defendant failed to raise statute of limitations as a defense in the district court and the court of appeals, the defense was considered waived).

Additional support for our determination is found in *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152 (2d Cir.1968). In that case our Circuit Court of Appeals stated:

[T]he Statute of Limitations is an affirmative or so-called "personal privilege" defense which may be waived if not promptly pleaded ... Certainty of suc-

cess is not an essential element in determining whether to set forth the affirmative defense in a pleading. If the defense lurks in the case, vacillation can cause the other party irreparable injury. *Id.* at 1155. *See Evans v. Syracuse City School District,* 704 F.2d 44, 47 (2d Cir. 1983). In analyzing defendant's claim in *Strauss* that it did not raise the limitations defense in its original answer because the law at that time did not permit that defense, the Second Circuit noted: first, that the New York Court of Appeals had indicated one and a half years before the answer was filed that the old rule would no longer be mechanically applied, *id.* at 1156; second, that within six months after the answer was filed the Second Circuit had expounded at length upon the implications of the New York Court of Appeals' decision; and third, that before the answer was filed, the issue was argued before the Circuit. "Thus, [defendant] and its counsel by reason of these events and the clear indications that the law in this area was undergoing serious reappraisal, should have been well aware of the possibility (uncertain as it might have seemed to them), that a Statute of Limitations defense might be effective against [plaintiff]." *Id.* at 1157. *See also Head v. Timken Roller Bearing Co.,* 486 F.2d 870, 874–75 (6th Cir.1973).

LIUNA would have us believe that the law in our Circuit was so clear cut on the issue of statute of limitations when it filed its answer (and through the time of trial) that there was no reason for it to assert that affirmative defense. We disagree. Although our Circuit had held that the National Labor Relations Act six month statute of limitations did not apply in actions against unions, it did not do so without a thorough analysis of that question. *See Assad v. Mt. Sinai Hospital,* 703 F.2d 36 (2d Cir), *vacated,* 464 U.S. 806, 104 S.Ct. 54, 78 L.Ed.2d 73 (1983); *Flowers v. Local 2602 of the United Steel Workers of America,* 671 F.2d 87, 90–91 (2d Cir.1982), *rev'd,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *Flowers,* decided six months after the complaint in the instant action was filed and five months before LIUNA's answer was filed, the Court held:

> The question remains whether to apply the three-year statute of limitations for malpractice actions, N.Y.Civ.Prac.Law § 214(6), or the six-month limitations period of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1976). We are persuaded by Justice Stevens' view that section 10(b) is inapplicable both because it relates only to administrative procedures established by Congress to resolve unfair labor practices ... and because it was adopted by Congress six years before the duty of fair representation was recognized. Indeed, not until *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), did the Court clearly hold the duty judicially enforceable. On the other hand, an action for breach of the union's duty fairly to represent its members at arbitration proceedings is closely analogous to an action for attorney malpractice.... We conclude, therefore, that the three-year nonmedical malpractice statute of limitations applies to the employees' action against the union for breach of its duty of fair representation. This would make the action against the union timely commenced.

Since "certainty of success is not an essential element in determining whether to set forth the affirmative defense [of statute of limitations]," *Strauss, supra,* at 1155, and since the Second Circuit found the issue regarding which particular statute of limitations was applicable to be worthy of analysis, we find that the defense "lurk[ed] in the case," *id.* at 1155, and should have been asserted in LIUNA's original answer or at least before the conclusion of the trial. Indeed, the limitations defense lurked enough in these types of cases that the month before the trial in the instant action was held, the *Flowers* case was argued before the Supreme Court which, in *Delcostello, supra,* reversed the determination made by our Circuit. In sum, it is our opinion that LIUNA could and should have asserted the statute of limitations defense before the judgment on

liability was rendered. It is too late now to raise the defense.

As we see it, LIUNA's motion to amend its answer must be and is denied.

D. *Motion by Theodore T. Green, Esq., for Permission to Represent LIUNA*

Theodore T. Green, Esq., moves for permission of the Court to represent LIUNA as counsel in the within action. This motion being unopposed, it is granted.

## II. *Plaintiff's Motion to Amend its Complaint*

Plaintiff moves pursuant to Fed.R.Civ.P. 15(a) for an order granting leave to amend the complaint to add the following paragraph:

37–A. By reason of the wrongful discipline imposed upon him as alleged hereinabove, Petramale has suffered denial of job referrals and loss of employment opportunities, with the consequent loss of earnings in an amount greater than $80,-000.

Plaintiff contends that defendants had adequate forewarning at the time of trial of plaintiff's intention to move to amend the complaint since he specifically described in his deposition of March 16, 1982 and at trial the claims he asserts in the proposed amendment. Thus, he argues, defendants will suffer no surprise and are not prejudiced by the addition of his amendment.

Rule 15(a) is interpreted broadly, providing that leave to amend shall be freely given when justice so requires. However, "this does not mean that all amendments should be granted under all circumstances." *Sobel v. Yeshiva University*, 477 F.Supp. 1161, 1168 (S.D.N.Y.1979). Leave may be denied where there is evidence of undue delay, bad faith, dilatory motives, and undue prejudice to the opposing party by virtue of allowance of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

We find that plaintiff's request has been unduly delayed. We note the strong preference of our Circuit Court of Appeals for amendments to be made in the pretrial stage: "[A]mendments should be tendered no later than the time of pretrial, unless compelling reasons why this could not have been done are presented." *Evans, supra,* 704 F.2d at 47 (1983) (quoting *Nevels v. Ford Motor Co.,* 439 F.2d 251, 257 (5th Cir.1971). In *Evans,* the Court refused to allow an amendment to add an affirmative defense two years and nine months after it could have been asserted where defendant offered no compelling reasons for the delay. Similarly, in the instant case, plaintiff readily concedes that he was aware at the time of his deposition on March 16, 1982 of his purported denial of job referrals. (Affidavit of Burton H. Hall, at 2), yet advances no reasons at all to justify his failure to add this claim to his pleadings at an earlier date.

We further find that substantial prejudice would befall defendants if we allowed the amendment. It would necessitate the reopening of discovery and result in further delay in the resolution of this lawsuit. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 332, 91 S.Ct. 795, 803, 28 L.Ed.2d 77 (1971). Undoubtedly, evidence has disappeared and memories have faded over the past four years since this action was commenced. To allow plaintiff now to litigate matters that he "had an opportunity, but neglected, to litigate," *id.* at 332, 91 S.Ct. at 803, would be an injustice to defendants.

In short, we find that the unexplained neglect of plaintiff, the prejudice and hardship that would befall the defendants, and the interests of fairness and justice compel us to deny plaintiff's motion for leave to amend the complaint.

## CONCLUSION

In accordance with the foregoing, we are constrained to, and do: grant LIUNA's motion for partial summary judgment finding that it cannot be liable for monetary damages; hold LIUNA's motion for partial summary judgment on the attorney's fees issue in abeyance pending the outcome of

the trial on damages; deny LIUNA's motion for leave to amend its answer; grant LIUNA's motion that it be represented by Theodore T. Green, Esq.; and deny plaintiff's motion for leave to amend the complaint.

SO ORDERED.