736 F.2d 13
 116 L.R.R.M. (BNA) 2654, 101 Lab.Cas. P 11,071
 Pasquale PETRAMALE, Plaintiff-Appellant,
v.
LOCAL NO. 17 OF LABORERS INTERNATIONAL UNION OF NORTH
AMERICA, Laborers International Union of North America,
Anthony Galietta, individually and as President of Local No.
17, Lawrence T. Diorio, individually and as
Secretary-Treasurer of Local No. 17, and Lorenzo Diorio,
individually and as Business Manager of Local No. 17,
Defendants-Appellees.
 No. 442 Docket 83-7483.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 28, 1983.
Decided May 29, 1984.
 
 Burton H. Hall, New York City (Hall, Clifton & Schwartz, New York City), for plaintiff-appellant.
 Alan R. Lewis, Newburgh, N.Y. (Rider, Drake, Sommers & Loeb, P.C., Newburgh, N.Y.), for defendants-appellees Local No. 17 of Laborers Intern. Union of North America, Anthony Galietta, Lawrence T. Diorio and Lorenzo Diorio.
 Jerome Tauber, New York City (Mary Jill Hanson, Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City), for defendant-appellee Laborers Intern. Union of North America.
 Before LUMBARD, WINTER and PRATT, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Alleging violations of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. Secs. 401 et seq. (1976), by his local union, its three chief officers and the parent international union, Pasquale Petramale brought this action for a variety of legal and equitable relief. Following a jury trial which resulted in a verdict for the defendants, Petramale appealed on grounds that he was disciplined for engaging in legally protected speech and that the court's instructions to the jury were erroneous.
 
 
 2
 We reverse and remand.
 
 BACKGROUND
 
 3
 Petramale has been a member of the Local No. 17 ("Local 17") of the Laborers International Union of North America ("LIUNA") for over thirty years. At relevant times, Local 17's President was Anthony Galietta, its Business Manager was Lorenzo Diorio and its Secretary-Treasurer was Lawrence T. Diorio. These officers, Local 17 and LIUNA are the defendants.
 
 
 4
 It appears that the events in question took place against a background of bad feeling between rival factions within Local 17. At Local 17's regular meeting on August 29, 1980, a member by the name of Anthony DuBaldi attempted to question his prior suspension from union activities but was refused permission to speak. Petramale raised his hand, was recognized by the chair and urged to no avail that DuBaldi be allowed to speak. DuBaldi subsequently became involved in a scuffle with another member. When Petramale left his seat to help, he was confronted by other members and an altercation resulted. The regular business of the meeting was interrupted by these events, and the police were called. After order was restored, Petramale stood up and spoke again, this time without recognition. The minutes of the meeting state:
 
 
 5
 Br. Pat Petramale stated from the back of the meeting Hall that all three of you are crooks, Referring to the three Delegates on the rostrum. All the fucking Officers are crooks. The whole fucking Union and International is crooked, and Br. Reed and Br. Curry Naming the Election Committee are fucking liars. Fuck you all, you laborers deserve these people. I'm getting out of this fucking Union. They took all your money.
 
 
 6
 Petramale then walked out of the meeting. At trial, he conceded that his remarks were critical of union officials but denied use of any expletives.
 
 
 7
 Two days later, on August 31, 1980, a local newspaper carried a story about the August 29 meeting. The article stated in part:
 
 
 8
 A rift within the local has been widening since the June 20 election. Elections Committee member Pasquale "Pat" Petramale, of Kingston, called this election "corrupt and fixed" while he spoke on the floor of the meeting Friday night.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 Petramale, a former supporter of DiOrio who testified against him during the election dispute, claimed the outbreak of violence was "set up" by the union leadership.
 
 
 12
 He charged he was laid off from his job as flagman on the Route 9W arterial project at Kingston earlier Friday because of his opposition to DiOrio. Petramale said he has been a union member for more than 30 years.
 
 
 13
 On September 3, intra-union disciplinary charges were filed against Petramale. The statement of charges read as follows:
 
 September 3, 1980
 Brother Victor Garzione
 Recording Secretary
 L.I.U. of N.A. Local No. 17
 
 14
 This is to inform you that Brother Lorenzo Diorio, Book No. 163400, Brother Lawrence Diorio, Book No. 163957, Brother Anthony Galietta, Book No. 163766 all members in good standing in Local No. 17 are preferring charges against Brother Patsy Petramale, Book No. 163536 for actions and violations against the officers of the local union and the interna-tional union under "Obligations of Members", Section 3 Page 8 of Uniform Local Union Constitution.
 
 
 15
 The specific instances I am referring to are on August 29, 1980 at the Regular Monthly Membership Meeting Brother Petramale violated Section 3 under Art. III:
 
 
 16
 (f) by conducting himself in such a manner as to interfere with the proper and orderly conduct of the business of the local union by using vulgar and profane language and slanderous statements and accusations against the officers of the local union and the international union.
 
 
 17
 (g) by wilfully slandering the officers of the local union and the international union by circulating false reports and gross misrepresentations about their honesty at the regular membership meeting.
 
 
 18
 Brother Petramale slandered the officers in the Middletown Record August 31, 1980 by stating that the election was corrupt and fixed and also when he claimed that outbreak of violence was set up by the union leadership.
 
 
 19
 Respectfully submitted,
 
 
 20
 /s/
 
 
 21
 Anthony Galietta, Pres.
 
 
 22
 /s/
 
 
 23
 Lorenzo Diorio, Bus. Mgr.
 
 
 24
 Lawrence T. Diorio, Sec.-Treas.
 
 
 25
 These charges tracked the language of Article III, Sec. 3 of the Uniform Local Union Constitution promulgated by LIUNA and adopted by Local 17.[1]
 
 
 26
 A hearing was held by Local 17's Trial Board, at which the minutes and newspaper article were the sole evidence. The Board found Petramale "guilty of all charges," fined him $1500 and suspended him from attendance at union meetings for a period of ten years. This discipline was subsequently approved by the Local's membership. Petramale then appealed to LIUNA. LIUNA's Hearing Panel heard testimony that Petramale was a troublemaker and had been disruptive at the August 29 meeting. It also heard Lorenzo Diorio testify that charges were preferred against Petramale because of his "accusations." The Hearing Panel modified the Trial Board's conclusions by finding only that Petramale's conduct at the August 29 meeting violated Article III Sec. (3)(f) and (g), thereby implying that the newspaper article was not a basis for discipline. LIUNA also modified the discipline by rescinding the fine and reducing the suspension to two years. Later, the suspension was reduced to meetings already passed.
 
 
 27
 Petramale instituted this action claiming that the discipline and union constitutional provisions on which it was based violated his statutory rights of free speech, as provided in Section 101 of the LMRDA, 29 U.S.C. Sec. 411. Plaintiff seeks a declaratory judgment that subsections (f) and (g) of Article III of LIUNA's constitution are unlawful; injunctive relief against the discipline imposed by LIUNA; and damages for emotional suffering and costs. At trial, the district court charged the jury that they should find for Petramale if they concluded that he was disciplined for his expression of views and opinions but that they should find for the defendants if Petramale had been disciplined for violating union rules regulating the time, place and manner of speech. The district court declined Petramale's request for an instruction that discipline imposed for a combination of several charges, one of which involves protected speech, is unlawful. Following a jury verdict for the defendants, Petramale took this appeal, claiming inter alia that, because he was disciplined on a combination of allegations, some of which are invalid under the LMRDA, the discipline is invalid. We reverse and remand.
 
 DISCUSSION
 
 28
 We believe that the following two principles of law derived from the LMRDA are dispositive of this appeal: (i) criticism of union officers, even when it amounts to slander, is protected speech under the LMRDA; and (ii) when union discipline is imposed on the basis of a combination of factual allegations an essential element of which is protected speech, the discipline as a whole is invalid under the LMRDA. Because it is clear beyond peradventure that each of the charges leveled against Petramale included as at least one element his slanderous accusations against union officers, the discipline imposed is invalid.
 
 
 29
 Section 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 411(a)(2) provides:
 
 
 30
 (2) Freedom of speech and assembly.--Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 31
 The LMRDA also provides that a union may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions [of the Act]." 29 U.S.C. Sec. 529.
 
 
 32
 We have previously interpreted these provisions to prohibit unions from disciplining a member for even libelous statements in union meetings criticizing the performance of union officers. Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); see Cole v. Hall, 462 F.2d 777 (2d Cir.1972) (malicious vilification of a union officer by a union member is protected speech); aff'd sub nom Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). We have adopted the view that union meetings, especially those involving election matters or disputes between rival factions within the union, such as those in the instant case, can be fraught with tension and even sparked with "vitriol and calumny," Salzhandler, 316 F.2d at 450 n. 7 (quoting Summers, American Legislation for Union Democracy, 25 Mod.L.Rev. 273, 287), and that leeway for the expression of strongly held views in emotional terms, even when they amount to slander, must be afforded union members.
 
 
 33
 However, unions may impose reasonable rules on the membership in the interest of maintaining order at meetings, 29 U.S.C. Sec. 411(a)(2), and a member's right of free speech is subject to reasonable regulations aimed at preventing the disruption of union business. See Rosario v. Amalgamated Ladies Garment Cutters Union, 605 F.2d 1228, 1239 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). Thus, nothing in the LMRDA prohibits a union from disciplining a member for actual disruption of a meeting.
 
 
 34
 Defendants argue that discipline was imposed in the instant case solely because Petramale's speaking without recognition and his repeated use of expletives were disruptive in the context of a meeting already interrupted by an altercation necessitating the calling of police. Viewing the evidence in the light most favorable to the defendants, however, it is clear that the findings of both the Local 17 and LIUNA tribunals included slander as an essential element.
 
 
 35
 Three charges were originally leveled at Petramale. One alleged slanderous remarks reported in the local paper. The LIUNA Hearing Panel in effect dismissed this charge. The second charge alleged slanderous remarks at the August 29 meeting. By explicitly finding that Petramale violated Article III, Sec. 3(g), which forbids slander, false reports or gross misrepresentations about union officers, the LIUNA Hearing Panel sustained this charge. The remaining charge, also sustained by LIUNA, was that Petramale, in violation of Article III, Sec. 3(f), interfered with the proper and orderly conduct of union business "by using vulgar and profane language and slanderous statements and accusations" against union officials. This charge thus unambiguously included as one element speech protected under Salzhandler v. Caputo. In considering Petramale's appeal, the LIUNA Hearing Panel had before it the testimony of Lorenzo Diorio, who repeated the statements made by Petramale at the August 29 meeting and said, "These are his accusations at an open meeting ..., and that is the basis that we preferred the charges." When asked whether Petramale had been disruptive, the other witnesses before the Hearing Panel all replied in the affirmative but described the disruption in terms of the accusations Petramale made against the officers. The Hearing Panel then sustained Local 17's finding of guilt on this charge. The record is thus clear beyond dispute that Local 17 and LIUNA inextricably lumped disruption and slander together as undifferentiated conduct subjecting Petramale to union discipline.
 
 
 36
 We believe that a union may not validly discipline a member upon charges and a record which include accusations against union officers as an essential element. To hold otherwise would seriously undercut the protection offered by Salzhandler v. Caputo and substantially chill the exercise of union members' rights by increasing the danger of subterfuge. Unions which institute disciplinary proceedings against members have no legitimate interest in making charges which allege protected conduct as an essential element and in creating a record in which valid charges--disruptive conduct--and invalid ones--accusations against union officers--are inextricably intertwined. If Local 17 and LIUNA intended to discipline Petramale for disruptive conduct other than the accusatory content of his remarks, they should have separated both the charge and the evidence so that subsequent review by a trier of fact in a judicial tribunal was possible. Instead, charges of disruption and slanderous accusations were inextricably merged and the accusations themselves were considered disruptive by the witnesses who testified before the LIUNA Hearing Panel. Both the charges leveled at Petramale and the record created by the union thus included protected speech as an indispensable element. It is altogether cynical now to seek to vary those charges and that record and to ask a trier of fact to draw distinctions which defendants themselves ignored.
 
 
 37
 Even assuming that precedents under 42 U.S.C. Sec. 1983 are fully applicable in the somewhat different context of the LMRDA, Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) is easily distinguishable. Mt. Healthy held that, where entirely separate incidents cause a municipal employer to discharge an employee and one such incident involves protected speech, the employer may attempt to persuade the trier of fact that the nonprotected incident alone would have resulted in the discharge. Id. at 285-87, 97 S.Ct. at 575-76. The instant case raises a considerably different issue since here we have inextricably intertwined charges of disruption and slander arising from a simple, undifferentiated incident. No attempt was made in the course of either Local 17's or LIUNA's proceedings to differentiate between conduct which was disruptive in the usual sense and conduct which was disruptive because it criticized union officers. The allegations of slanderous accusations permeated the entire proceedings. We hold that defendants may not at this late stage seek to disentangle from the web they wove around Petramale one charge which, standing alone, might pass statutory muster.
 
 
 38
 Given the present record, we need not decide whether the Mt. Healthy rule applies to cases arising under the LMRDA. In view of the undifferentiated charges against him, all arising from one simple, undifferentiated incident, Petramale was entitled to an instruction to the jury that, when discipline is imposed on a number of grounds, one of which involves protected speech, the discipline is unlawful. We must, therefore, reverse.
 
 
 39
 Since further proceedings in the district court are necessary and since it is clear that what we have said supra will induce Petramale's counsel to move for a directed verdict, it is appropriate that we go further. Any reasonable jury must conclude on the record established in the Local 17 and LIUNA proceedings that Petramale was disciplined at least in part for speech protected under Salzhandler v. Caputo. The discipline was thus illegal as a matter of law and Petramale is entitled to a directed verdict on liability. Since subsections (f) and (g) of Article III, Sec. 3 of the Uniform Local Union Constitution have been deleted, Petramale's claims for declaratory and injunctive relief against these provisions are moot.[2] His claims for injunctive relief against the discipline imposed by Local 17 are viable, and an appropriate order consistent with this opinion should be entered by the district court on remand. His claims for damages and fees must be adjudicated on the remand.
 
 
 40
 The judgment is reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The relevant subsections of the Uniform Local Union Constitution, Article III, Sec. 3, Obligations of Members, read:
 (f) To refrain from attending a meeting or function under the influence of liquor or conducting himself in such a manner as to interfere with the proper and orderly conduct of ... business ...; ... at no time use vulgar or profane language nor make any slanderous statements or accusations toward any member or officer of the Local Union ...
 (g) To refrain from willfully slandering the International Union ... or Local Union or any officer or member thereof; ... and from circulating false reports or gross misrepresentations about the honesty of officers or members ...
 In September, 1981, LIUNA amended its constitution to delete the references in subsections (f) and (g) to slanderous statements.
 
 
 [2]
 One portion of subsection (g) prohibiting union members from advocating or seeking division of union funds has not been repealed or deleted from LIUNA's constitution. Since that provision was not a basis of the discipline imposed on Petramale, and since Petramale has not demonstrated either by allegation, evidence or argument what effect that provision has on his protected speech, we dismiss his complaint insofar as it relates to the unrepealed portion of subsection (g)