847 F.2d 1009
 128 L.R.R.M. (BNA) 2461, 128 L.R.R.M. (BNA) 2779,
109 Lab.Cas. P 10,539
 Pasquale PETRAMALE, Appellant,
v.
LOCAL NO. 17 OF LABORERS' INTERNATIONAL UNION OF NORTH
AMERICA, Laborers' International Union of North America,
Anthony Galietta, individually and as President, and
Lawrence T. Diorio, individually and as Secretary-Treasurer
of Local No. 17, and Lorenzo Diorio, Appellees.
 No. 795, Docket 87-7955.
 United States Court of Appeals,
Second Circuit.
 Argued March 16, 1988.
Decided May 13, 1988.
 
 Burton H. Hall, New York City (Hall & Sloan, New York City, on the brief), for appellant.
 Moacyr R. Calhelha, Newburgh, N.Y. (Rider, Weiner & Melchiori, Newburgh, N.Y., on the brief), for appellees Local No. 17 of Laborers' Intern. Union of North America, Anthony Galietta, Lawrence T. Diorio and Lorenzo Diorio.
 Theodore T. Green, Washington, D.C. (Robert J. Connerton, Susan M. Sacks, and Connerton, Ray & Simon, Washington, D.C., on the brief), for appellee Laborers' Intern. Union of North America.
 Before TIMBERS, PRATT and MINER, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 This case is no stranger to this Court. It is here for the second time.
 
 
 2
 The action stems from discipline meted out by Local No. 17 of the Laborers' International Union of North America ("Local 17") to Petramale, a union member, for making allegedly slanderous accusations against union officials and for disrupting a union meeting. Petramale appealed to the parent international union, Laborers' International Union of North America ("LIUNA"). After a hearing, the discipline essentially was upheld, although the punishment was reduced. Petramale commenced the instant action in the district court against Local 17, its three chief officers, and LIUNA. He alleged that the discipline and the union constitutional provisions on which it was based violated his statutory rights of free speech as protected by the LMRDA.
 
 
 3
 The first time this case was before us, Petramale appealed from a jury verdict in favor of the unions and union officers. The verdict upheld the disciplinary measures against Petramale. We reversed and held that the jury instructions were improper. Petramale v. Local No. 17 of Laborers Int'l Union, 736 F.2d 13, 18 (2 Cir.1984). We went further, however, and held that any permissible punishment for disruption was "inextricably merged" with punishment for slanderous accusations which was protected speech. We held that it was the accusations themselves that were considered disruptive by many union member witnesses. Accordingly, we held the discipline illegal as a matter of law and directed a verdict for Petramale on the issue of liability. Id. at 19. We remanded the case for a determination of damages and costs. Id.
 
 
 4
 Since the facts and prior proceedings leading up to the imposition of disciplinary measures against Petramale were set forth in detail in our first opinion in the instant case, familiarity with which is presumed, we limit our summary here to the subsequent facts and proceedings.
 
 
 5
 In an opinion filed January 6, 1986, the district court granted LIUNA's motion for partial summary judgment on the issue of monetary damages on a finding that LIUNA merely exercised its appellate authority in good faith. 625 F.Supp. 775 (S.D.N.Y.1986). In a memorandum filed April 22, 1986, the court stated, among other things, that LIUNA would have to be present at trial if it did not enter into a stipulation by May 2 agreeing to be permanently enjoined from effectuating the disciplinary punishment imposed on Petramale and from otherwise interfering with his right to attend and participate in union meetings. LIUNA was required to notify all members of Local 17 that the punishment was null and void. On May 9 LIUNA entered into the stipulation and consequently was not present at the trial on damages.
 
 
 6
 At the trial on the issue of damages against Local 17 and the union officials (collectively "appellees") following the remand from our Court, Petramale claimed that he should recover for emotional distress, his marital separation and loss of reputation.
 
 
 7
 Petramale's sons, Joseph and Steven, both testified that Petramale became very moody and argumentative after his problems with the union began and that these problems eventually led to their parents' marital separation. Although their parents had resumed marital relations, the sons testified that their parents did not get along as well as before the union problems began. Joseph, also a member of Local 17, testified that the other union members, former friends of his father, no longer would speak to his father and heckled him when he tried to speak at union meetings. Petramale's testimony was substantially the same. The incident with the union, according to Petramale, had made him moody and argumentative; he and his wife quarreled about the "union and everything else"; and this led to their marital problems. Petramale also testified that the incident with the union had made him nervous and unable to sleep at night. He did not say when his sleeping problem began nor did he describe its extent. There was no expert medical testimony. Petramale admitted that he never sought medical treatment for any of his alleged injuries.
 
 
 8
 The jury awarded Petramale damages in the total sum of $265,000 plus costs. This sum was comprised of $200,000 in compensatory damages against Local 17; $50,000 in punitive damages against Local 17; and $5,000 in punitive damages against each of the three individual union officers. Local 17 and the three union officers moved for judgment n.o.v. pursuant to Fed.R.Civ.P. 50(b) or in the alternative for a new trial pursuant to Fed.R.Civ.P. 59(a). On October 7, 1987, the court granted the motion for judgment n.o.v. and ordered that Petramale should receive nominal damages of $1.00. 671 F.Supp. 261 (S.D.N.Y.1987). The court based its decision on a finding that Petramale had failed to meet his burden of proving actual injury. Furthermore, the court found that "the only evidence in support of ... [Petramale's] argument that the union caused his emotional difficulties was self-interested testimony." Finally, the court held that Petramale had failed to prove that the union or its officers acted with malicious intent or reckless and wanton indifference to his rights, and therefore there was no justification for the awards of punitive damages.
 
 
 9
 It is from the judgment entered January 6, 1986 granting LIUNA partial summary judgment and from the judgment entered October 7, 1987 granting Local 17 and the union officers their motion for judgment n.o.v. that Petramale has taken the instant appeal.
 
 I.
 
 10
 We turn first to whether judgment n.o.v. was properly granted to appellees on the issue of compensatory damages. Claims of emotional distress and claims of injury to reputation arising from violations of LMRDA must be supported by "a physical manifestation of emotional distress." Rodonich v. House Wreckers Union Local 95, 817 F.2d 967, 977-78 (2 Cir.1987). Thus actual injury is a requisite element. As stated above, Petramale testified that he was suffering from physical manifestations. Appellees had ample opportunity to challenge his testimony on cross-examination. The jury was entitled to believe or disbelieve his testimony. Since it was the province of the jury to assess the credibility of the witnesses, including that of Petramale, we are constrained to hold that the court erred in completely discounting Petramale's testimony as being "self-interested".
 
 
 11
 Viewing the totality of the evidence in the light most favorable to Petramale, as we must, we reverse the district court's grant of judgment n.o.v. as to compensatory damages.
 
 II.
 
 12
 We turn next to whether the amount of compensatory damages awarded by the jury was excessive. As an appellate court, we "must accord substantial deference to the jury's determination of factual issues." Wheatley v. Ford, 679 F.2d 1037, 1039 (2 Cir.1982); see also Wheatley v. Beetar, 637 F.2d 863, 865 (2 Cir.1980); Music Research, Inc. v. Vanguard Recording Society, Inc., 547 F.2d 192, 195 (2 Cir.1976). A judgment cannot be upheld, however, "where the damages awarded are so excessive 'as to shock the judicial conscience.' " Wheatley, supra, 679 F.2d at 1039. "When a judgment is grossly excessive, this Court may order the plaintiff to remit excessive damages or undergo a new trial." Id.; see also Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 755 (2 Cir.1984); Botsford v. Ideal Trucking Co., 417 F.2d 681 (2 Cir.1969); Wicks v. Henken, 378 F.2d 395 (2 Cir.1967) (per curiam).
 
 
 13
 Following these guidelines, we now examine whether the compensatory damage award of $200,000 is within the range of an appropriate award.
 
 
 14
 Although there was some evidence adduced by Petramale's testimony that he suffered from nerves and sleeplessness, there was no testimony as to the extent of those physical manifestations. Moreover, there was no medical testimony, nor did Petramale seek medical help. Petramale and his sons testified that the problems with the union led to his emotional distress, marital problems, and injured reputation; yet it is unclear how much of his injuries were caused by the illegal punishment as opposed to general problems with the union.
 
 
 15
 We therefore are constrained to hold that this is one of those rare cases in which the compensatory damages awarded are grossly excessive. The testimony at trial simply does not support a verdict of the magnitude of $200,000. A careful review of the evidence convinces us that an award of $100,000 is quite adequate to compensate Petramale for his injuries. Accordingly, we remand for a new trial on the issue of compensatory damages, unless Petramale agrees within ten days of the date of this opinion to remit all compensatory damages in excess of $100,000.
 
 
 16
 We of course do not claim any omniscience in determining what would constitute a non-excessive award of compensatory damages. About all this panel of three former trial judges can assert is our conscientious belief that an award of $100,000 would reflect substantial justice. See the famous Farmer Achilles opinion of Judge Medina (whose one hundredth birthday we celebrated on February 16 of this year), Achilles v. New England Tree Expert Co., 369 F.2d 72 (2 Cir.1966), where, after puzzling over the remittitur ordered by the trial judge (the late Honorable Ernest W. Gibson), Judge Medina concluded:
 
 
 17
 "Thus, call this particular Vermont judgment what one will, it does substantial justice and we will not disturb it."
 
 
 18
 Id. at 74.
 
 III.
 
 19
 We also reverse the district court's grant of judgment n.o.v. on the issue of punitive damages. We cannot say that no rational juror would have awarded punitive damages on the evidence presented. The individual officers were responsible for setting in motion the whole disciplinary process, and there is no indication that the jury was instructed improperly as to the need to find malicious intent or reckless or wanton indifference on the part of the officers. Under the circumstances, a $5,000 award against each officer does not seem unjustified or excessive. We therefore reinstate the jury verdict against them.
 
 
 20
 As for the actions of the local union itself, the district court found no punitive damages warranted, relying primarily on its belief that approval of the punishment by the entire membership indicated lack of a "personal vendetta", and on the union's request to LIUNA to rescind the discipline after LIUNA had affirmed the discipline as modified. We do not believe that these facts give us sufficient basis to sweep aside entirely the determination of punitive damages by a properly instructed jury. The approval of the entire membership could just as easily support Petramale's claim. Moreover, the union's request to LIUNA to rescind the discipline was made after the action was commenced and after the LIUNA constitution was amended to eliminate the provision under which Petramale had been disciplined.
 
 
 21
 We do hold, however, that there should be a remittitur of part of the punitive damages awarded against the union. We must make sure that a punitive damage award "not be so great as to cripple the union financially and detract significantly from its ability to represent its members. The trial judge should be prepared to reduce any award that fails to reflect sufficient consideration of these factors." Quinn v. DiGiulian, 739 F.2d 637, 651 (D.C.Cir.1984) (citation omitted). The plaintiff in Quinn, like Petramale, was a union member disciplined for protected speech. An award of $3,000 in punitive damages was upheld. We believe that an award of $50,000 in punitive damages in the instant case was excessive. Accordingly we hold that the award should be reduced to $10,000.
 
 IV.
 
 22
 This brings us finally to the question of whether the court properly granted LIUNA's motion for partial summary judgment. The court held that LIUNA acted in its appellate capacity in "good faith", but the court applied what we perceive to be an erroneous legal definition of "good faith" in granting LIUNA's motion. Petramale should have the opportunity to prove the damages he sustained by reason of the fact that LIUNA "ratified Local [17's] action with full knowledge of its unlawful character". Rodonich, supra, 817 F.2d at 976.
 
 
 23
 As to LIUNA, therefore, we reverse the partial summary judgment and remand that part of the case for a trial on damages.
 
 V.
 To summarize:
 
 24
 (1) We reverse the judgment n.o.v. as to the compensatory damage award and we remand the case for a new trial on the issue of compensatory damages unless appellant agrees within ten days of the date of this opinion to remit all compensatory damages in excess of $100,000.
 
 
 25
 (2) We reverse the judgment n.o.v. as to the punitive damage award. We reinstate the jury verdict of $5,000 punitive damages against each of the three union officers. We remand for a new trial on the issue of punitive damages against the local union unless appellant agrees within ten days of the date of this opinion to remit all such punitive damages in excess of $10,000.
 
 
 26
 (3) We reverse the grant of partial summary judgment in favor of LIUNA. We remand that part of the case for a trial on damages.
 
 
 27
 No costs on this appeal.
 
 
 28
 Reversed in part; reversed and remanded in part.