**Roy COMMER, Plaintiff,**

v.

**Michael KELLER, et al., Defendants.**

**No. 98 Civ. 7808 (AGS).**

United States District Court,
S.D. New York.

Aug. 27, 1999.

**268**

Arthur Z. Schwartz, Kennedy, Schwartz & Cure, P.C., New York City, for Plaintiff.

Rachel J. Minter, Law Office of Rachel J. Minter, New York City, for Defendants.

## OPINION AND ORDER

SCHWARTZ, District Judge.

Plaintiff commenced this action against defendants, union officers, alleging the violation of federal labor laws in connection with defendants' suspension of plaintiff from his position as president of the union. Plaintiff's motion for a preliminary injunction was rendered moot by his subsequent reinstatement, but plaintiff filed a Second Amended Complaint seeking monetary damages. Defendants have filed an Answer which asserts various counterclaims related to plaintiff's conduct as president. The case is before the Court on plaintiff's motion (i) to dismiss defendants' counterclaims, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6); and (ii) for sanctions, pursuant to Fed.R.Civ.P. 11. For the reasons stated herein, the motion to dismiss is GRANTED and the motion for sanctions is DENIED.

## FACTUAL BACKGROUND

Plaintiff Roy Commer is the president of Civil Services Technical Guild, Local 375 (hereinafter "Local 375"), a union representing technical employees of the City of New York and various non-profit organizations. Local 375 is affiliated with the American Federation of State, County, and Municipal Employees ("AFSCME") and AFSCME's regional governing body, District Council 37 ("DC 37"). (Second Amended Complaint ("Compl.") ¶ 3.) Defendants are other members of the Executive Board of Local 375, who plaintiff alleges acted illegally when they suspended him from his position as president. (*Id.* ¶¶ 4, 7.)

Plaintiff was elected to the presidency of Local 375 in January 1998 on an anti-corruption platform, after defeating an eighteen year incumbent. (*Id.* ¶ 5.) Since being elected president of Local 375, Mr. Commer alleges that he has spent much time and effort attempting to reform the union and expose alleged corruption. (*Id.*) Plaintiff alleges that, partly as a result of his efforts, AFSCME commenced an audit of the locals in DC 37. (*Id.* ¶ 6.)

The Executive Board of Local 375 suspended Mr. Commer from his position as president on or about November 8, 1998. (*Id.* ¶ 7.) The stated reasons for the suspension was that Mr. Commer had engaged in "conduct imminently dangerous to the welfare" of the union. (*Id.*) Defendants, in their opposition papers to plaintiff's original preliminary injunction motion, cited eleven charges against Mr. Commer, including acceptance of illegal gifts, improper use of funds, aid to a competing organization, interference with a subordinate body, instituting legal action without exhausting internal remedies, improper distribution of literature, and failure to follow requests of the Executive Board.

On or about November 26, 1998, AFSCME President Gerald McEntree, acting pursuant to the AFSCME constitution, ordered plaintiff reinstated as president of Local 375. The Court subsequently dismissed the preliminary injunction motion as moot.

Plaintiff asserts that he was suspended by the Executive Board not for the pretextual reasons asserted by the Board but rather because of his efforts to reform the union, including speaking to the media in a manner critical of DC 37 and the past leadership of Local 375. (*Id.*) Plaintiff asserts that his suspension violated his rights to freedom of speech and association, as guaranteed by federal labor law and the AFSCME constitution.

In their Answer to the Second Amended Complaint ("Answer and Counterclaims"), defendants assert four counterclaims against plaintiff. In substance, defendants allege that plaintiff is abusing his position as president, and is acting unlawfully and dictatorially in a manner that infringes on their rights to freedom of speech and association. Plaintiff asserts that these counterclaims are frivolous, and moves for their dismissal and for Rule 11 sanctions.

## DISCUSSION

### I. MOTION TO DISMISS

Plaintiff moves to dismiss defendants' counterclaims pursuant to Fed.R.Civ.P. 12(b)(6). On such a motion, the court is required to accept the material facts alleged in defendants' counterclaim as true and to construe all reasonable inferences in favor of defendants. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (citing *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994)); *Meridien Int'l Bank Ltd. v. Government of the Republic of Liberia*, 23 F.Supp.2d 439, 445 (S.D.N.Y.1998) (stating that, in deciding a 12(b)(6) motion to dismiss counterclaims, the "Court must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party"). Defendants' counterclaims should be dismissed only if the Court determines that "it appears beyond doubt that the [non-movants] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Gant*, 69 F.3d at 673 (citing *Allen v. West-Point–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))). However, the Court is not required to uphold the validity of a claim supported only by conclusory allegations: "conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995).

All four of defendants' counterclaims purport to assert claims pursuant to Section 101(a)(2) of the Labor Management

Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2) (" § 101(a)(2)"). This section protects union members' freedom of speech and assembly, providing that

> [e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings....

29 U.S.C. § 411(a)(2). The purpose of this freedom of speech and assembly provision was explained by the Supreme Court in *United Steelworkers v. Sadlowski*, 457 U.S. 102, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982):

> Congress adopted the freedom of speech and assembly provisions ... in order to promote union democracy. It recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal.

*Id.* at 112, 102 S.Ct. 2339 (internal citations omitted). *See also Salzhandler v. Caputo*, 316 F.2d 445, 448–49 (2d Cir.1963) (stating that the purpose of sections 101(a)(1) and (2) was "to protect the rights of union members to discuss freely and criticize the management of their unions and the conduct of their officers ... [and] to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain").

An individual whose rights secured by § 101(a)(2) have been "infringed" may, pursuant to § 102 of the LMRDA, seek redress in federal district court, where the court may order "appropriate" relief. *See* 29 U.S.C. § 412 (" § 102"); *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 538,

104 S.Ct. 2557, 81 L.Ed.2d 457 (1984) (*"Crowley"*) (citing § 102). Additionally, § 609 of the LMRDA provides that it is unlawful to "discipline" any union member for exercising rights guaranteed by the LMRDA. *See* 29 U.S.C. § 529. However, the legislative history of the LMRDA indicates that courts should act with caution when considering intervening in union disputes. "Exerting a countervailing force to Congress's desire to legislate union democracy was a more modern, but still well established, policy against government interference with the internal affairs of unions." *Dolan v. Transport Workers Union of Am.*, 746 F.2d 733, 739 (11th Cir.1984).

In order to reconcile the competing interests of fostering union democracy and preserving union independence, to state a claim under § 101(a)(2) of the LMRDA, a claimant must demonstrate "a direct infringement of membership rights or a real threat to the democratic integrity of the union." *Depperman v. Local 1199 Union*, 1994 WL 225434 at 5, No. 91 Civ. 6696(JFK), (S.D.N.Y. May 25, 1994) (citing *Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 48 (2d Cir.1989)). Although an action pursuant to § 609 will require a showing that the plaintiff has been "unlawfully disciplined," even in the absence of such discipline a claimant may be entitled to seek redress under section 102 for an "infringement" of LMRDA rights. *Finnegan v. Leu*, 456 U.S. 431, 439, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). Additionally, although only speech as a member, not as an officer, is protected by § 101(a)(2), an attack on a union officer may be held to violate members' rights if the attack was part of a "scheme to suppress dissent" among union officials and the claimant can show by clear and convincing proof that the attack was part of "a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Cotter v. Owens*, 753 F.2d 223, 229 (2d Cir.1985).

## A. Defendants' First Counterclaim

In defendants' first counterclaim, they assert that plaintiff Commer, subsequent to his election, has

transformed Local 375 from a democracy in which the Executive Board, delegate body and various advisors and trustees councils all participated in shaping union policies, to a virtual monarchy in which all decisions are made solely by plaintiff Commer and the policy-making bodies of the board are deliberately bypassed.

(Answer and Counterclaims ¶ 19). Defendants further allege that plaintiff has

engaged in a series of oppressive acts intended to (a) suppress dissent among the leadership and membership of Local 375; (b) threaten members' freedom to express their views and opinions on union business; and (c) interfere with their right to meet and assemble freely with other members.

(*Id.* ¶ 20.)

■ In support of these allegations, however, defendants allege few specific facts. Principally defendants allege in the first counterclaim that plaintiff has undertaken to mail literature and make speeches to union members that strongly criticize defendants. In essence, defendants attempt to state a cognizable § 101(a)(2) claim merely by asserting that plaintiff has distributed mailings with "his partisan political views" and that plaintiff makes "defamatory attacks on any officer or Executive Board Member who disagrees with him." (Answer and Counterclaim ¶ 21.) These facts, however, even if demonstrated, are not capable of supporting the conclusory allegations in defendants' first counterclaim that defendants' freedom of expression has been infringed.

■ First, it is clear that defendants are unable to maintain a claim pursuant to § 609 because defendants have not alleged that they have been "disciplined" by plaintiff. "The publication by officers of a union newsletter does not constitute 'discipline' within the meaning of the LMRDA." *Kirk v. Transport Workers Union of Am., AFL–CIO*, 934 F.Supp. 775, 785 (S.D.Tex. 1995). Even without "discipline," defendants could still state a claim under § 102 if they could demonstrate that rights secured to them by the LMRDA have been "infringed." *See Finnegan*, 456 U.S. at 439, 102 S.Ct. 1867. However, defendants have failed to make such a showing.

Defendants' allegations that plaintiff has retaliated against them for their opposition to him, and acted to suppress dissent and prevent union members from speaking out are undoubtedly addressed to the very heart of union democracy. However, in order to defeat this motion to dismiss, it is not enough for a complaint merely to recite conclusory allegations that state the policies underlying § 101(a)(2). Rather, defendants are required to allege facts that can conceivably support a conclusion that their membership rights have been directly infringed, or that there is a "real threat to the democratic integrity of the union." *Depperman*, 1994 WL 225434, at 5. Here, the factual allegations fall far below the standard required in order to state a claim for infringement of rights guaranteed by § 101(a)(2) of the LMRDA.

■ Criticism of another union official is not an "oppressive act" or retaliation serious or threatening enough to support a conclusion that the speaker is unlawfully suppressing dissent in a manner that threatens union democracy. Defendants do not assert in their counterclaim that plaintiff has threatened them with physical harm, a legal proceeding,[1] or any loss of

---

1. Defendants assert in their memorandum of law that plaintiffs mailings "accuses defendants of actual crimes." (Defendants' Memorandum of Law at 7.) Defendants' counterclaim merely states that one mailing was headed "Report From the President—Help Eliminate the Crooks and Demagogues" and accused defendants of engaging in "illegal and harmful" acts. (Answer and Counterclaims ¶ 21.) These vague statements cannot

membership benefits. The few courts that have permitted a § 101(a)(2) infringement case to proceed based on mere speech all involved speech with a direct threat of punishment by the speaker. *See, e.g., Guzman v. Bevona,* 90 F.3d 641, 645 (2d Cir.1996) (noting that a § 101(a)(2) claim was permitted to proceed, partly based on a letter received by the plaintiff, because there was an issue as to whether the letter threatened union discipline); *DeCarlo v. Salamone,* 977 F.Supp. 617, 624 (W.D.N.Y. 1997) (permitting § 102 infringement claim to proceed because letter sent to plaintiff threatened legal prosecution and created anxiety over possible punishment). In contrast, the statements that are the subject of defendants' allegations amount only to simple name-calling and critical language.

▄▄▄ In addition to the fact that mere speech, absent an implied or explicit threat of meaningful official punishment, does not reach the level usually required in order to demonstrate infringement of rights guaranteed by § 101(a)(2), the policies underlying § 101(a)(2) compel that speech such as that undertaken by plaintiff not be used as a means for subjecting him to legal sanction. Far from violating § 101(a)(2), speech that criticizes union officials, such as plaintiff's attack on defendants, is precisely the type of speech that is meant to be *protected* by § 101(a)(2). *See Petramale v. Local No. 17 of Laborers Int'l Union of North Am.,* 736 F.2d 13, 16 (2d Cir.1984). "Criticism of union officers, even when it amounts to slander, is protected speech under the LMRDA." *Id.*

Nor have defendants pled facts to support a conclusion that an "established union history or articulated policy" exists which evinces "a deliberate attempt by union officials to suppress dissent within the union." *Id.* Critical statements made

by the union president against political rivals hardly amount to a series of oppressive acts by the union leadership. *Cf. Schermerhorn v. Local 100, Transp. Workers Union of Am.,* 91 F.3d 316, 323–4 (2d Cir.1996); *Cotter v. Owens,* 753 F.2d at 229. The cases that do permit claims to go forward based on the silencing of an officer almost uniformly involve the dismissal of that officer from his or her position in the union leadership. *See, e.g., Cotter v. Owens,* 753 F.2d at 229. Defendants' allegations do not contain facts sufficient to support the conclusion that plaintiff's verbal and written attack on defendant union officers threatens the ability of other members to speak out. *Id.*

▄▄▄ Defendants also allege in their first counterclaim that (i) plaintiff unlawfully used union funds to pay for his literature without Board approval, as required by the union constitution, and (ii) plaintiff has systematically bypassed the policy-making bodies of the local when making his decisions. (Answer and Complaint ¶ 21.) These are indeed troubling allegations. However, "[n]either [§ 101(a)(2)] nor [the] LMRDA as a whole were intended to eliminate all threats to union democracy." *Dolan,* 746 F.2d at 741. "Congress did not intend Title I of the LMRDA to create a panoply of rights to which all persons injured in some way relating to a union may turn when seeking redress." *Phelan v. Local 305 of the United Ass'n of Journeymen,* 973 F.2d 1050, 1055 (2d Cir. 1992). Defendants' allegations of the violation of Local 375's constitution may be addressable under alternative federal and state laws.[2] However, in asserting that their rights under § 101(a)(2) have been violated, defendants are required to demonstrate that their rights as members have been interfered with as a reprisal for their protected speech in a manner that threat-

---

be understood to threaten the initiation of legal proceedings against defendants.

**2.** For example, a violation of a union constitution may be actionable by a member as a

breach of contract claim against the union. *See Korzen v. Local Union 705, Int'l Bhd. of Teamsters,* 75 F.3d 285, 288 (7th Cir.1996).

ens union democracy. They have manifestly failed to do so.

The fact that union funds are being used to support alternative speech does not infringe on defendants' free speech rights. There is no allegation that defendants were denied access to media or the ability to speak in their defense. *See, e.g., Members for a Democratic Union v. Local 1101, Communications Workers of America, AFL–CIO,* 697 F.Supp. 771, 772–776 (S.D.N.Y.1988). The policies behind the enactment of § 101(a)(2) were to encourage, not discourage, alternative viewpoints and "vigorous debate." *See Sadlowski,* 457 U.S. at 112, 102 S.Ct. 2339.

■■■ Nor is the admittedly disturbing allegation that plaintiff is making policy without calling board meetings that are required by the union constitution sufficient to state a claim pursuant to § 101(a)(2). This type of activity is simply not the focus of § 101(a)(2)'s protection of the freedom of assembly. "[T]he right to assembly conferred by [§ 101(a)(2) ] was intended to enable union members to meet outside their regular union meetings for the purpose of discussing internal union affairs without fear of reprisal by union officials." *Yanity v. Benware,* 376 F.2d 197, 199 (2d Cir.1967) (holding that the defendant's failure to call a meeting of the membership when requested to do so in accordance with the union constitution did not violate the plaintiffs' rights under § 101(a)(2)).[3] Further, while defendants,

as officers, may have a right to participate in union policy-making, the statutory rights of "association and expression ... are accorded only to union members acting as members and not to union officers." *Johnson v. Kay,* 860 F.2d 529, 536 (2d Cir.1988).

For these reasons, defendants' first counterclaim must be dismissed for failure to state a claim.

### B. Defendants' Second Counterclaim

■■■ Defendants' second counterclaim asserts that plaintiff has used union funds to campaign against defendants Keller and Silverman, who are incumbent chapter presidents, which is prohibited by the union constitution. Like the first counterclaim, the second counterclaim purports to state a claim pursuant to § 101(a)(2), asserting that plaintiff's campaign against Keller and Silverman is intended to suppress their free speech in retaliation for their criticism of him.

As stated previously, misuse of union funds alone does not state a claim under § 101(a)(2). This allegation may assert a violation of other statutes,[4] including Title IV[5] of the LMRDA, but the LMRDA does not provide for private enforcement of Title IV rights. *See* 29 U.S.C. § 482(a) and (b) (providing for enforcement by the Secretary of Labor); *Crowley,* 467 U.S. at 539, 104 S.Ct. 2557.

---

**3.** A member's freedom of speech, however, may be violated by a refusal to permit him to speak at an already called meeting, or by intentionally adjourning meetings early in order to prevent a member from raising an issue or arguing a particular point. *See Herr v. Cineplex Odeon Corp.,* No. 92 Civ. 5447(CSH), 1994 WL 75008, at 9–10 (S.D.N.Y. March 4, 1994) (holding that the union members' "right to meet and assemble freely with other members" may be violated when membership meetings were forcibly ended prematurely). Similarly, union members' freedom to assemble may be violated where the membership has attempted to have a meeting but the union has engineered a lack of a quorum in order to prevent the meeting

from taking place. *Id.* Defendants do not allege that plaintiff has prevented the membership at large from meeting.

**4.** "Expenditures by union officers that violate the union's constitutio[n] represent the classic case of breach of fiduciary duty under section 501." *Guzman v. Bevona,* 90 F.3d 641, 647 (2d Cir.1996). Similarly, it is likely that many of the allegations here are more properly asserted as breaches of fiduciary duty or breach of contract claims. *See Korzen,* 75 F.3d at 288.

**5.** *See, e.g.,* 29 U.S.C. § 481.

As in the previous section, the Court finds that speech against rival union officials—in the form of critical statements in the union newsletter and at chapter meetings, is not sufficient "retaliation" or "discipline" in order to amount to infringement of a member's right to freedom of expression and association. Defendants fail to allege anything more tangible than an active, but non-violent, campaign against defendants union officials Keller and Silverman. Again, not only does this speech not violate § 101(a)(2), but because the speech occurred incident to an imminent election, it is among the type of speech most important to union democracy. *See Sadlowski*, 457 U.S. at 112, 102 S.Ct. 2339 (noting "the interest in fostering vigorous debate during election campaigns" underlying § 101(a)(2)). Permitting such speech to be the basis of a cause of action would be anathema to the entire purpose of § 101(a)(2).

### C. Defendants' Third Counterclaim

Defendants' third counterclaim alleges that plaintiff has undertaken various actions in the name of the local without obtaining board approval. While again noting that these allegations, if true, are troubling, the Court must conclude that they do not state a claim under § 101(a)(2). Although defendants assert conclusorily that their rights to assemble freely and speak out at union meetings has been infringed by the failure to call board meetings, this counterclaim does not assert a violation of § 101(a)(2). *See Yanity*, 376 at 199 (freedom to assemble does not include broad right to have meetings called); *Johnson v. Kay*, 860 F.2d at 536 (holding that § 101(a)(2) does not protect union officers' rights as officers).

### D. Defendants' Fourth Counterclaim

Defendants' fourth counterclaim similarly does not assert a valid claim under § 101(a)(2). It asserts that plaintiff engaged in a number of manipulative practices in connection with meetings of the Board of Trustees of Local 375's legal services fund. Plaintiff and defendants, by virtue of their union offices, are also trustees of the legal services fund. (Answer and Counterclaim ¶ 30.) Defendants allege that plaintiff has acted to exclude defendants from such meetings, scheduling meetings so that particular trustees would not be able to attend, and cancelling meetings where his political enemies were in the majority on the grounds that no quorum was present, when in fact a quorum was present. (Answer and Counterclaim ¶ 31.)

However, defendants here are asserting that they have not received their entitlements as union officers or trustees of the fund, not that they have lost their privileges as union members. These allegations that they have been deprived of the ability to speak as trustees are not sufficient to state a claim pursuant to § 101(a)(2) because those "rights of association and expression . . . are accorded only to union members acting as members and not to union officers acting solely in their official capacity as officers." *Johnson v. Kay*, 860 F.2d at 536 (citing *Finnegan v. Leu*, 456 U.S. at 436–37, 102 S.Ct. 1867). In *Herr*, for example, a similar cause of action was permitted to proceed, based on the manipulation of meetings of the *general membership. See Herr*, 1994 WL 75008 at 9–10. Here, however, the allegations are confined to defendants' ability to speak and assemble as officers and trustees, and do not state a claim under § 101(a)(2).

## II. MOTION FOR SANCTIONS

The Court finds that defendants' counterclaims were not asserted frivolously, to harass plaintiff, or as an attempt to delay unduly these proceedings. The motion for sanctions is therefore denied.

### CONCLUSION[6]

For the reasons stated, plaintiff's motion to dismiss defendants' first, second, third,

---

**6.** As an alternative basis of decision with re-

spect to the first three counterclaims, the

and fourth counterclaims is GRANTED. Defendants' motion for sanctions is DENIED.

SO ORDERED.

Court notes that it is required only to give "appropriate relief" upon a finding of a violation of § 102(a)(2) that infringes on a member's rights. *See* 29 U.S.C. § 402. The Court finds that it would not be appropriate to order relief against a plaintiff based solely on speech by him that was conducted in the course of a union power struggle, and which did not contain any threats of physical violence, legal sanction, or union discipline.