**MEMBERS FOR A DEMOCRATIC UNION, Dave Newman, Nat Clark, Doris Edwards, Ilene Winkler, Brent Kramer, Thomas Horry, Tomasina Schwarz, Robert Delaney, Philip Dabney, Maria Capote, Willie Wheeler and Alex Kruedner–Struve, Plaintiffs,**

v.

**LOCAL 1101, COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO; Ed Dempsey, as President of Local 1101, Communications Workers of America AFL–CIO; and Craig Hinckle, as Chairman of the Election Committee Local 1101, Communications Workers of America, AFL–CIO, Defendants.**

No. 87 Civ. 6534 (RJW).

United States District Court, S.D. New York.

Oct. 21, 1988.

Clifton & Schwartz, New York City, for plaintiffs; Arthur Z. Schwartz, of counsel.

O'Donnell & Schwartz, New York City, for defendants; Carl Rachlin, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs commenced this action seeking mandatory injunctive relief compelling defendants to allow plaintiffs to place an advertisement in the newspaper of Local 1101, Communications Workers of America, AFL–CIO ("Local 1101").[1] They argue that they are entitled to such relief under section 101(a)(2) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2). Plaintiffs and defendants have each moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons that follow, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

## BACKGROUND

Defendant Local 1101 is a labor organization. It functions as the collective bargaining representative of employees of the New York Telephone Company and the American Telephone & Telegraph Company. According to plaintiffs, Local 1101 has over eleven thousand (11,000) members located throughout the boroughs of Bronx and Manhattan in New York City. The individual defendants are officers of Local 1101. Plaintiff Members for a Democratic Union ("MDU") is a rank and file caucus within Local 1101. MDU has been active as an opposition caucus within Local 1101 for the past nine years. The individual plaintiffs are all members of both Local 1101 and MDU.

Local 1101 publishes a newspaper called The Generator. Plaintiffs have asserted that during the period from August 1980 to December 1986, at least thirteen different issues of The Generator included advertisements for professional services or retail establishments. Plaintiffs' Memorandum of Law in Support of Their Motion For Summary Judgment, at 5. Defendants do not contest that certain advertisements have appeared in The Generator, but indicate that no money has ever been accepted by Local 1101 to run these notices. Defendants Rule 3(g) Statement of Uncontested Material Facts, ¶ 5. Defendants maintain that these advertisements are included solely to benefit the members of Local 1101 by informing them of professional service providers and retail establishments that will offer favorable rates to union members. Plaintiffs have produced no facts to controvert these assertions. MDU also publishes its own newsletter, known as The Bell Wringer, which regularly sets forth the views of MDU.

Starting in October 1986, MDU began advocating the adoption of a "Defense Fund" to provide financial support for the members of Local 1101 during the first two

---

1. The complaint originally alleged a second cause of action wherein plaintiffs sought to minimize the costs of an election campaign mailing they were to undertake utilizing the mailing lists and facilities of Local 1101. The parties have agreed that this cause of action is no longer before the Court. Defendant's Rule 3(g) Statement of Uncontested Material Facts, ¶ 16.

weeks of a strike.[2] MDU used the Bell Wringer, as well as leaflets, buttons and a petition, to speak out for the creation of a Defense Fund throughout the winter of 1986/87 and the spring of 1987. Plaintiffs do not contend that articles or advertisements concerning the Defense Fund issue were printed in The Generator during that time, or at any other time.

On June 1, 1987 MDU leader Dave Newman, on behalf of MDU, wrote to the editors of The Generator asking to be allowed to contribute an article to the paper or to "insert a paid advertisement subject to the same terms as those whose advertisements were regularly printed." Plaintiffs' Rule 3(g) Statement of Uncontested Material Facts, ¶ 15. While there is some dispute among the parties regarding the timing of their correspondence, there is no dispute that plaintiffs' request was ultimately denied. In response, plaintiffs commenced this lawsuit on September 9, 1987, seeking to have an advertisement promoting the Defense Fund appear in The Generator.

## DISCUSSION

A court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–250, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)). While the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983), "the

mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2nd Cir.1985) (per curiam).

Although the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a court to terminate frivolous claims and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co.*, *supra*, 804 F.2d at 12. The motion then

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed Rule Civ Proc. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

As noted above, the parties in the instant case have each moved for summary judgment. Cross-motions for summary judgment, however, do not warrant the granting of summary judgment unless the Court finds that "one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Frouge Corp. v. Chase Manhattan Bank*, 426 F.Supp. 794, 796 (S.D.N.Y. 1976). *See also Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 716 (2d Cir.1985); *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313–14 (2d Cir.1981); *Home Ins. Co. v. Aetna Casualty and Surety Co.*, 528 F.2d 1388, 1390 (2d Cir.1976).

**2.** The Communications Workers of America, the national union with which Local 1101 is affiliated, currently provides a financial support

fund for picketing union members on strike for over two weeks.

Plaintiffs argue that defendants' refusal to allow them to place an advertisement in The Generator violates their free speech rights under section 101(a)(2) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2). Section 101(a)(2) provides:

Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings. *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Section 101(a)(2), part of the Bill of Rights of Members of Labor Organizations, was designed to promote union democracy by guaranteeing the rights of free speech and assembly to union members. *United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 112, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982) (union rule prohibiting non-members from contributing to campaigns for union offices upheld because it was rationally related to union interests). The Supreme Court examined the legislative history behind this statute in *Sadlowski* and found that it was intended "to restate a principal First Amendment value—the right to speak one's mind without fear of reprisal." *Id.* at 111, 102 S.Ct. at 2345. While First Amendment values may be useful in applying section 101(a)(2), the rights granted in this statute are not coextensive with those of the First Amendment. The Supreme Court has explained that:

"there is absolutely no indication that Congress intended the scope of § 101(a)(2) to be identical with the scope of the First Amendment.... Union rules [restricting First Amendment freedoms] are valid under § 101(a)(2) so long as they are reasonable; they need not pass the stringent tests applied in the First Amendment context."

*Id.* Furthermore, there exists no right under the First Amendment which would require a private publication to publish information submitted by an outsider. *See, e.g., Miami Herald Publishing Co. Div. of Knight Newspapers, Inc., v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). While the individual plaintiffs, as members of Local 1101, may be considered co-owners, or insiders, of The Generator, *see Knox County Local, Nat'l Rural Letter Carriers' Assoc., v. Nat'l Rural Letter Carriers' Association*, 720 F.2d 936, 940 (6th Cir.1984), the facts presented to the Court indicate that their reliance on section 101(a)(2) to require defendants to publish their advertisement is misplaced.

In applying section 101(a)(2), courts follow a two step analysis laid down in *Sadlowski*. First, the court must determine "whether the rule interferes with an interest protected by the first part of § 101(a)(2). If it does, [the court] then determine[s] whether the rule is 'reasonable' and thus sheltered by the proviso to § 101(a)(2)." *United Steelworkers of America v. Sadlowski, supra*, 457 U.S. at 111, 102 S.Ct. at 2345.

Plaintiffs challenge the editorial policy of The Generator that resulted in a rejection of their request to pay for an advertisement. Assuming that the Defense Fund advertisement falls within the scope of the interests Congress intended to protect under section 101(a)(2), plaintiffs still must show that the defendants' refusal to publish the advertisement was an unreasonable interference with their right to communicate with other union members. *See Roman v. New York State United Teachers*, 655 F.Supp 422, 424 (S.D.N.Y.1987) (union newspaper not required to publish political advertisement of union members). Indeed, "the critical question [in applying section 101(a)(2)] is whether a rule that partially

interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." *United Steelworkers of America v. Sadlowski, supra,* 457 U.S. at 112, 102 S.Ct. at 2346.

In support of their claim that section 101(a)(2) gives them the right to force defendants to carry their message in The Generator, plaintiffs rely solely, and mistakenly, upon the opinion of the Sixth Circuit in *Knox County Local, Nat'l Rural Letter Carriers' Assoc. v. Nat'l Rural Letter Carriers' Association, supra,* 720 F.2d at 936. In *Knox County,* the National Rural Letter Carriers Association ("NRLCA") was directed, pursuant to section 101(a)(1) & (2), to publish a paid advertisement submitted by a local union in the NRLCA's newspaper.[3] Subsequently, the Sixth Circuit has made it clear that the appropriateness of an order requiring a union newspaper to carry another's message depends on the factual circumstances of the case.[4]

In *Knox County,* the union newspaper had "opened the forum" of its publication to the commercial speech of its members and outside merchants by regularly printing commercial advertisements. *Id.* at 940. In addition, the newspaper in *Knox County* had published articles urging ratification of a collective bargaining agreement, the very issue which the proposed advertisement sought to oppose. *Id.* at 937. It was these specific facts which lead the court to conclude, focusing on First Amendment values, that a union "in control of a *protected, open,* and *exclusive* forum of communication [may not] unreasonably refus[e] ... access to that forum based solely upon the *content*" of the proposed message. *Id.* at 941 (emphasis in the original). The circum-

stances which made such relief appropriate in *Knox County* are not present in the instant case.

The undisputed facts of the present action indicate that for some time The Generator has had a policy of not accepting any paid advertisements. Plaintiffs have not disputed defendants' assertions that the notices which have appeared in The Generator in the past have all related to professional or retail services available to union members at a low cost or that these notices have been printed free of charge.

Defendants' editorial policy which dictates that The Generator will not print any paid advertisements serves to avoid controversial editorial decisions regarding potential advertisements.[5] Its application in an even-handed manner is consistent with the requirements of section 101(a)(2). The acts of allowing notices of low cost professional and retail services to appear in The Generator are discretionary, editorial decisions. Such decisions are not equivalent to granting parties who are willing to pay money a right to insert their views in The Generator. There have been no facts presented to support a finding that defendants "opened up the forum" of The Generator to the commercial speech of others.

Furthermore, there has been no impermissible content-based restriction on communication in the present action. The Generator has not carried any articles or advertisements relating to the Defense Fund issue. Additionally, there have been no allegations by plaintiffs that defendants apply their editorial policy regarding paid advertisements in anything but a consistent manner. Plaintiffs here seek special treatment that other union members, even those who support the union administration, have not

3. *Id.* at 939. The Court of Appeals reversed and remanded the district courts' grant of summary judgment to the defendants because it found the NRLCA's refusal to print the advertisement had been "purely a content based" restriction on communication between union members. *Id.* at 940.

4. *Murphy v. International Union of Operating Engineers, Local 18,* 774 F.2d 114 (6th Cir.1985) *cert. denied* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986) (court declined to follow

*Knox County* and force publication of an advertisement in a union paper because of factual differences between the cases).

5. Defendants also maintain that such a policy eliminates any uncertainty concerning the continuation of The Generator's low-cost mailing privileges under United States Postal Service regulations which apply to non-profit organizations.

been afforded. The only evidence produced by plaintiffs to buttress their position that the defendants' decision not to publish their advertisement is a violation of section 101(a)(2) is a deposition remark of defendant Ed Dempsey, President of Local 1101. Mr. Dempsey, in response to a question concerning the discussions he had relating to plaintiffs' request, stated that:

I did say we didn't think we wanted to get into that type of thing, and that I didn't think it was a good idea to put in arguments or articles that would be divisive within the local union.

Deposition of Ed Dempsey, Exhibit Z annexed to Plaintiffs' Rule 3(g) Statement of Uncontested Material Facts.

Plaintiffs argue that the above comment concerning the divisive effect of the advertisement amounts to an impermissible "content-based" restriction on speech under section 101(a)(2). Given the defendants' uncontested policy against printing paid advertisements, the consistent, even-handed application of that policy, and the lack of any prior speech in The Generator regarding the Defense Fund issue, the above statement is insufficient to sustain an inference that defendants' action was "purely a content-based" restriction on communications or that a violation of Section 101(a)(2) may have occurred. *See generally Roman v. New York State United Teachers, supra,* 655 F.Supp. at 424.

Moreover, in the context of union publications, the Second Circuit Court of Appeals has explained that:

duly elected officers of a union have a right and a responsibility to lead, and to give the members the benefit of their advice on questions that arise. They have a right to use the union publications to express their views, and are not ordinarily required to give space therein to the expression of contrary views, provided they do not interfere improperly with whatever rights members may have to communicate their views to other members.

*Sheldon v. O'Callaghan,* 497 F.2d 1276, 1282 (2nd Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974). Even

if defendants had taken a position on the Defense Fund issue in the union publication, this alone would not entitle plaintiffs access to the union newspaper under section 101(a)(2). *See Roman v. New York State United Teachers, supra,* 655 F.Supp. at 424. Of course, as noted above, plaintiffs have not even alleged that defendants have spoken out on the Defense Fund issue.

Finally, there is no support for concluding that an advertisement in The Generator is the only economically feasible channel of communication plaintiffs have to reach other union members. *See Sheldon v. O'Callaghan, supra,* 497 F.2d at 1282–83 (access to union newspaper denied, but mailing list made available as it provided a viable medium to communicate with union members), *but cf. Knox County Local, Nat'l Rural Letter Carriers' Assoc., v. Nat'l Rural Letter Carriers' Association, supra,* 720 F.2d at 940–41 (not economically feasible to mail to over 64,000 union members in national union). Plaintiffs' own actions belie such an assertion. They have requested and received mailing lists from defendants, presumably to reach those union members they now state are unreachable absent use of The Generator. Additionally, plaintiffs engage in a variety of activities to get their positions across to other union members, including the distribution of the Bell Wringer newsletter by MDU. It should also be noted that the audience plaintiffs' wish to reach is limited to just two of the five boroughs of New York City. There are no other facts before the court to suggest that defendants have improperly interfered with plaintiffs' ability to communicate their views to other union members. Consequently, there is no foundation for plaintiff's claim that a violation of section 101(a)(2) has occurred.

## CONCLUSION

No genuine issues of material fact exist regarding plaintiffs' claim for relief under section 101(a)(2). The policy of defendants in refusing to accept all paid advertisements is reasonable, and plaintiffs have presented no facts which would question

the even-handed application of such a policy. Accordingly, defendants' motion for summary judgment is granted, plaintiffs' motion for summary judgment is denied, and the action is dismissed.

It is so ordered.